## APPEAL OF THE RECORD ABSTRACT CO.

Docket No. 1808.   Submitted May 16, 1925.   Decided September 28, 1925.

> 1. Taxpayer was not, during the years 1919 to 1922, inclusive, a personal service corporation.
>
> 2. Taxpayer and another abstracting company entered into a written agreement with the owners of the capital stock of a competing company, under the terms of which the books of the competitor were to be placed in escrow subject to use by the purchasers until they should have paid through monthly installments the total sum of $74,000 for the capital stock of such competitor. *Held*, that the amounts so paid constitute capital expenditures and may not be deducted under section 234 (a) as an ordinary and necessary business expense.

*Samuel H. Moyer, Esq.*, for the taxpayer.
*E. C. Lake, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, TRUSSELL, and GREEN.

This appeal is from determinations of deficiencies in income and profits taxes for the calendar years 1919 to 1922, inclusive, in the amounts of $2,270.74, $1,361.76, $597.51, and $714.19, respectively, arising from the refusal of the Commissioner to allow taxpayer to deduct in each of the years its entire net income as officers' salaries and, also, the denial of its alternative claim that it was a personal service corporation.

### FINDINGS OF FACT.

Taxpayer is a Colorado corporation with principal offices and place of business at Denver, engaged in the business of compiling abstract books, for furnishing abstracts of title, and information concerning titles to real estate. During the years 1919 to 1922, inclusive, its capital stock amounted to $25,000, divided into 25,000 shares of the par value of $1, all of which had been issued for cash.

At the time the corporation was organized all the money paid in for stock was used in purchasing and perfecting an incomplete set of abstract books; these books when finished to contain a complete

record of the title to all real estate in what is now Denver, Arapahoe, and Adams Counties, Colo. Since then taxpayer has maintained these books complete in every detail by adding to them from time to time records of all conveyances, mortgages, judgments, and other matters affecting real estate titles in the counties named. During the years in question taxpayer and one other abstract company did all of the abstract business of these counties, it being impossible, owing to the manner in which the public records concerning real estate titles were kept, for any person to prepare perfect abstracts of title unless he had access to a set of books such as that owned by the taxpayer or the other company. The work of keeping these books complete and the preparation of the abstracts of title sold by the taxpayer was performed by experienced and expert employees, some of whom had been in the employ of the taxpayer for more than 20 years.

During the years 1919 to 1922, inclusive, taxpayer's entire capital stock was owned in equal amounts by Charles H. Scott, president; Edward Whitley, treasurer; and H. R. Hughes, secretary. These men composed the board of directors. Each of them devoted his entire time to the affairs of the corporation. There were no other stockholders, directors, or officers. The income of the corporation during the years 1919 to 1922, inclusive, was derived entirely from the sale of abstracts of title to real estate, such abstracts being copies of the details shown in the abstract books which were owned and controlled by the taxpayer.

On January 9, 1906, at a meeting of the board of directors of the taxpayer, the following resolution was adopted and has remained in effect since that date:

RESOLVED, that the three officers of this Company, to-wit, President, Treasurer, and Secretary, in lieu of drawing any salary for their services, shall, from this date, monthly divide the surplus cash in the Treasury (after payment of all bills, and leaving a balance of not less than $1000 in the bank) into three equal parts, and each of said officers receive one of said parts in full for his services for the preceding month.

The income of the taxpayer for the years 1919 to 1922, and the deductions taken for those years, as shown by its income-tax returns, were as follows:

|  | 1919 | 1920 | 1921 | 1922 |
|---|---|---|---|---|
| Sales of abstracts | $42,944.35 | $43,823.18 | $38,024.12 | $46,011.83 |
| Deductions: | | | | |
| Employees' salaries | 10,141.75 | 12,187.85 | 11,353.15 | 13,486.14 |
| Lease of abstract books | 2,879.60 | 3,257.01 | 2,951.70 | 3,268.82 |
| Other expenses | 4,570.85 | 6,126.52 | 3,322.19 | 6,693.38 |
| Officers' salaries | 24,600.00 | 21,750.00 | 19,650.00 | 21,450.00 |
|  | 42,192.20 | 43,321.38 | 37,277.04 | 44,898.34 |
| Net income | 752.15 | 501.80 | 747.08 | 1,113.49 |

The duties of the officers of the corporation to whom the salaries were paid, to wit, Charles H. Scott, Edward Whitley, and H. R. Hughes, were the same during the years 1919 to 1922, inclusive.

The prime factor in the preparation of the abstracts of title sold by the taxpayer was the possession of the complete set of abstract books, with competent employees to use them. These books had a value of more than $25,000 and were a material income-producing factor in the taxpayer's business.

In addition to the books used in its offices, taxpayer, from January 6, 1919, had the use of a set of abstract books held in escrow by the Colorado National Bank of Denver. This set of incomplete abstract books, known as the Stephens' books, was formerly owned by the Denver Abstract & Title Co. The taxpayer and the Landon Abstract Co. became desirous of acquiring these books to eliminate competition and to have them to rely upon in the event of their own books becoming lost or destroyed. On January 6, 1919, the Stephens Investment & Trust Co., Clarence E. Stephens, Harold H. Stephens, and Alice R. Stephens—the owners of the capital stock of the Denver Abstract & Title Co.—together with the taxpayer and the Landon Abstract Co., entered into a written agreement which provided that the taxpayer and the Landon Abstract Co. should pay to the Stephens Investment & Trust Co., through the Colorado National Bank, the sum of $74,000, in monthly installments, based upon a certain percentage of gross receipts. The Colorado National Bank was to hold the said books in escrow until the amount of $74,000 should have been paid, at which time the taxpayer and the Landon Abstract Co. should become the owners of the entire capital stock of the Denver Abstract & Title Co., in proportion to the amounts paid by each. Under this agreement the taxpayer paid $2,879.60 in the year 1919, $3,257.01 in the year 1920, $2,951.70 in the year 1921, and $3,268.82 in the year 1922. These amounts were charged to expense and deducted from gross income in each of the years as rental for the books.

The taxpayer filed its returns for the years 1919 to 1922 on Form 1120 as a corporation subject to income and profits tax. Upon audit of the returns the Commissioner determined that $14,850 was a reasonable compensation for the services rendered by the taxpayer's officers for each of the years involved. He therefore allowed the taxpayer as deductions from gross income on account of salaries for its officers the sum of $14,850 in each year, adjusted the taxpayer's net income accordingly, and determined that there was a deficiency in tax for the years 1919 to 1922 in the amount of $4,944.20. The taxpayer claims that the amounts drawn by its officers as salaries during the years 1919 to 1922 represented reasonable compensation for services rendered by them in those years. It also claims that it is en-

titled to classification, for the years involved, as a personal service corporation, within the meaning of section 200 of the the Revenue Act of 1918 and section 200 of the Revenue Act of 1921.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, in accordance with Rule 50.

### OPINION.

LITTLETON: The taxpayer contends that its income for the years 1919 to 1922, inclusive, is ascribable primarily to the activities of its stockholders who were regularly and actively engaged in the conduct of its affairs; that the capital employed in its business is not a material income-producing factor and that it is, therefore, entitled to classification as a personal-service corporation and to exemption from taxation under section 218 of the Revenue Act of 1918 and section 218 of the Revenue Act of 1921. It further contends that the amounts drawn by its stockholders during the years involved herein represent reasonable compensation for services actually rendered by them in those years and that, even if classification as a personal service corporation is denied, the deficiency determined by the Commissioner should be disallowed.

The Commissioner on the other hand insists that the income of the taxpayer was not ascribable primarily to the activities of its stockholders; that the use of capital was a material income-producing factor, and that the amount allowed by him as salaries to the taxpayer's officers for the years 1919 to 1922, inclusive, viz, $14,850 for each year, was adequate and reasonable compensation for the services rendered by them. He also insists that the amounts paid by the taxpayer for the Stephens' books under the agreement were capital expenditures, and, as they had heretofore been charged to expense and deducted from gross income, the deductions should be disallowed and the deficiency, as heretofore determined by him, increased accordingly.

We can not agree with the taxpayer that its income is ascribable primarily to the activities of the stockholders and that its capital is not a material income-producing factor. On the other hand, we think that the use of capital was not only a material factor in producing the taxpayer's income, but that it was the principal factor. It appears from the evidence that, for a person or corporation to undertake to engage successfully in the abstract business in the locality served by the taxpayer, the ownership or use of a set of ab-

stract books, such as is owned by the taxpayer, is absolutely necessary; otherwise the business can not survive. The books owned by the taxpayer were acquired in the year 1898, at a cost of $25,000, and since that date a large amount of money has been expended in keeping them complete. In addition the taxpayer had the use, if necessary, of another set of books which, though incomplete, appear to be of value. Regardless of the activities of its stockholders, the taxpayer could not furnish the abstracts—from the sale of which its entire income is derived—without the ownership and use of such books. For these particular books it has paid, and is paying, large amounts of money. The original capital of the taxpayer was invested in them and, in addition, large amounts have been spent in adding to them. This capital of the taxpayer was a material income-producing factor, without the use of which the business could not long survive. It follows that the taxpayer is not entitled to classification as a personal service corporation, or to exemption from taxation as such.

During the years 1919 to 1922, inclusive, the taxpayer divided its net income equally among its three officers and stockholders in lieu of compensation for services rendered by them during those years. The Commissioner has determined that amounts in excess of $14,850 a year represent a distribution of profits and he has, therefore, disallowed as deductions from gross income the amounts drawn by the officers in excess of $14,850 for each year and has increased the taxpayer's income by the amounts disallowed. In view of the facts disclosed by the record we are of the opinion that the allowance made by the Commissioner should be approved.

The only other question presented by the record is whether the amounts paid by the taxpayer during the years 1919 to 1922, inclusive, to the Stephens Investment & Trust Co. through the Colorado National Bank, under the agreement referred to in the findings of fact, are capital expenditures or ordinary and necessary business expenses. It appears from the evidence that the taxpayer and the Landon Abstract Co., which at the present time is the taxpayer's only competitor, secured from the Denver Abstract & Title Co., under a contract of purchase of the entire capital stock of that company, the use of an incomplete set of abstract books, which books were to become the property of the taxpayer and the Landon Abstract Co., through the ownership by them of the entire capital stock of the Denver Abstract & Title Co., as soon as they should have paid the amount of $74,000 through monthly installments. The control of the books of the Denver Abstract & Title Co. by the taxpayer and the Landon Abstract Co. was for the purpose of eliminating competition and to have a set of books to rely upon in the

●vent of their own records being destroyed. Charles H. Scott, president of taxpayer, testified in respect to these books as follows:

A good many years ago Stephens was in the business and he had a set of books and he was sort of a thorn in the flesh and we leased his books so that we can use them in case we need to if any of our records should be destroyed. These books are not posted or kept up with the daily transfers. If at any time any of our books should get mislaid or we should lose them or if they should partially get burned or anything of that sort, we have the use of these books, which are stored away, to replace anything that would be lost in our own books. Kind of an insurance business you might almost call it.

Q. You have those books stored away and go to them whenever you need to, when any of your own records are misplaced or destroyed you go to these books?  ●

A. Yes.

The books of the Denver Abstract & Title Co. were of value for two reasons: First, that they precluded competition, and secondly, in the event of the taxpayer's books being lost or destroyed it will be in a position to replace them. Upon the completion of the payments under the agreement it will be a part owner of a set of books at a cost of $74,000. It therefore appears that by the payments made under the contract of purchase the taxpayer is acquiring an interest in a valuable asset, and we are of the opinion that the amounts so paid constitute capital expenditures and not ordinary and necessary business expenses. Since these amounts have been charged to expense and deducted from gross income, the deductions should be disallowed and the taxpayer's net income for each of the years increased accordingly.

ARUNDELL not participating.