CUYAHOGA ABSTRACT TITLE & TRUST CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8937. Promulgated May 26, 1927.

It appearing from the evidence that capital was a material income-producing factor in petitioner's business, it is not entitled to classification as a personal service corporation under section 200 of the Revenue Act of 1918.

*Ben Jenkins, Esq.,* for the petitioner.
*Geo. G. Witter, Esq.,* for the respondent.

This proceeding is for the redetermination of deficiencies in income and profits taxes for the year 1918 in the amount of $3,671.85, for the year 1919 in the amount of $6,849.11, and for the year 1920 in the amount of $252.52, a total of $10,773.48. The only issue presented is whether petitioner was, during the years involved, entitled to classification as a personal service corporation as that term is defined by section 200 of the Revenue Act of 1918.

FINDINGS OF FACT.

The petitioner is an Ohio corporation, with its principal office at Cleveland. It was organized in May, 1900, with an authorized capital stock of $20,000, divided into 200 shares of a par value of $100 each. The corporation succeeded a partnership which had been in existence since 1898, and its stock was issued for the partnership assets, consisting principally of records and abstracts of title, which constituted a so-called " abstract plant." From the date of its organization and during the years involved herein, petitioner was engaged in the business of preparing abstracts and certificates of title to real estate, for which it made charges to its clients according to the amount of work involved. The number of abstracts furnished was small in comparison with the number of certificates, and about 75 per cent of petitioner's services were furnished to banks. In the preparation of abstracts and certificates of title, employees searched the records and assembled the necessary data under the supervision of the principal stockholders, one of whom would pass opinion upon the validity of each title and finally approve each abstract or certificate. The principal owners or stockholders of petitioner were during the years in question regularly engaged in the active conduct of its affairs.

In 1911, the authorized capital stock of petitioner was increased from $20,000 to $200,000. Additional stock in the amount of $180,000 was issued and set up on the books as good will.

The abstract plant, for which petitioner at organization issued its capital stock of $20,000, had been built up by the predecessor partnership, and, during the succeeding years, additions and betterments were constantly made to the plant by the petitioner. The larger part of the cost of maintaining, building up, and improving the plant by the petitioner, was paid out of its current earnings and charged to expense. Petitioner expended between $200,000 and $300,000 in maintaining and building up its plant, which now has a replacement value of not less than $500,000.

Petitioner's investment in its abstract plant was necessary to enable it to render the services from which it received its income. The plant was essential to the efficient performance of its functions.

Without the plant it would have been necessary to go to the court house to look up the records in each case, and this would have precluded work on a number of titles at the same time. Without the plant, it would have been impracticable for petitioner to have operated its business.

An important factor in the preparation of abstracts and certificates of title by petitioner was the possession of a complete set of abstract books and records, such as those maintained by it, with employees competent to use them. Petitioner's abstract plant represented a capital investment, which was a material income-producing factor in its business.

During the year 1918, petitioner had 33 employees to whom it paid salaries in the aggregate amount of $37,232; during 1919, it had 41 employees to whom it paid $57,148; and during 1920, it had 75 employees to whom it paid $113,620. These employees were classified, according to the duties performed by them, as searchers and examiners, indexing and filing clerks, draftsmen, private secretaries, typists and comparers, bookkeepers, general clerks, and office boys.

As shown by its amended tax returns, petitioner had a net income for the year 1918 of $17,725.48; for 1919 a net income of $69,949.52; and for 1920, a net income of $60,234.64.

### OPINION.

TRAMMELL: The Revenue Act of 1918 exempts personal service corporations from the taxation imposed upon ordinary business corporations, and provides in section 218 (e) that the individual stockholders shall be taxed in the same manner as the members of partnerships. In section 200 of the Act a personal service corporation is defined as one (a) whose income is to be ascribed primarily to the activities of the principal owners or stockholders, (b) who are themselves regularly engaged in the active conduct of the affairs of the corporation, and (c) in which capital (whether invested or borrowed) is not a material income-producing factor.

For each of the years 1918, 1919, and 1920, petitioner filed an original corporation income and profits-tax return on Form 1120, and for the years 1919 and 1920 later filed amended returns on the same form. Under date of November 15, 1923, petitioner prepared and filed a personal service corporation return of income on Form 1065, for each of said years, thereby claiming for the first time to be a personal service corporation. Petitioner now contends that it is entitled to classification as a personal service corporation, and as such is exempt from taxation under the provisions of the revenue act above mentioned. No error other than respondent's refusal to allow such classification is alleged to have been committed in connection with

his determination of the deficiencies involved in this proceeding. Respondent avers that petitioner is not entitled to classification as a personal service corporation for the reason that its income can not be ascribed primarily to the activities of its principal stockholders, and because capital was a material income-producing factor in its business. Thus, the sole issue presented is whether petitioner, during the years in question, possessed the qualifications of a personal service corporation as defined in section 200 of the Revenue Act of 1918.

Since petitioner is seeking to overturn the determination of respondent, the burden is upon it clearly to establish by competent and satisfactory evidence that it comes within the class of corporations referred to. As stated by the court in *Matteson Co.*, v. *Willcuts*, 12 Fed. (2d) 447:

Every corporation has full control of its own activities. * * * If it does not fairly observe and keep within the requirements of the law, it should not claim the benefits which the law confers. To nearly comply with the law or to come within hailing distance thereof, is not enough.

&ast;          &ast;          &ast;          &ast;          &ast;          &ast;          &ast;

There is constant temptation to urge that particular corporations, with no right to such favor, be accorded classification as personal service corporations, and the requirements necessary thereto must be substantially observed.

Has petitioner discharged its burden and shown itself fairly to come within the definition of a personal service corporation? We think it has wholly failed to do this.

The evidence shows that petitioner at the time of its organization in 1900 issued its entire capital stock of the par value of $20,000 for a set of abstract books and records, which were accepted at that valuation, and that during the succeeding years up to 1920, it spent large sums of money amounting to between $200,000 and $300,000 by way of additions and betterments to its abstract plant in order to keep it up to date. It is immaterial that such expenditures were largely made from current earnings and charged to expense. Book entries are not conclusive of the nature of the expenditure. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179–188. A taxpayer has no option to treat expense items as capital or capital expenditures as expenses. *Appeal of Gilliam Mfg. Co.*, 1 B. T. A. 967. We are not here concerned with the question of what portion of the expenditures might properly be regarded as maintenance and hence be chargeable to expense, and what part represents a capital investment. It is sufficient to say that the expenditures in question raised the value of petitioner's abstract plant from $20,000 in 1900 to several hundred thousand dollars in 1920, and to a very material extent constituted an investment of capital. The replacement value of the abstract plant is shown to be now approximately $500,000. Without the possession and use of such plant, petitioner could not successfully have conducted its business. On that point, J. V. Chapek, a witness for petitioner,

and who has been its president for 26 years, testified at the hearing as follows:

Q. In other words, you think that you have got to have that investment in the business before you could perform that service to the public?

A. Yes.

Q. Before you could perform it efficiently?

A. Absolutely. You have got to have that. You have got to have all that stuff together. If you don't have it you cannot do the work. Of course we could not do the work that we do, work on ten or fifteen jobs, if we had to go to the Court House and look up the records. That is something that we could not do night and day efficiently.

Q. In other words, that is where you make your money?

A. Yes.

In the light of this and the other evidence before us, we are unable to agree with the contention of petitioner that the capital represented by its plant was not a material factor in producing its income. On the contrary, the evidence shows that it was the principal factor. In the *Appeal of Record Abstract Co.*, 2 B. T. A. 628, the facts were strikingly similar to those in the instant case. There we held that the abstract books of the taxpayer corporation represented a capital asset which was a material income-producing factor in its business, and precluded classification as a personal service corporation.

Having decided that capital was a material income-producing factor, the petitioner herein does not meet the requirements of a personal service corporation and a discussion of the other elements prescribed by the statute is not necessary.

*Judgment will be entered for the respondent.*