### CUYAHOGA ABSTRACT TITLE & TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

Court of Appeals of District of Columbia.

Submitted October 3, 1928. Decided November 5, 1928.

No. 4677.

David J. Shorb, Ben Jenkins, and E. W. Wallick, all of Washington, D. C., for appellant.

LeRoy L. Hight, C. M. Charest, V. J. Heffernan, M. W. Willebrandt, Asst. Atty. Gen., and H. R. Gamble, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This is an appeal from a decision of the Board of Tax Appeals, reported in 7 B. T. A. 95, approving and affirming a determination of the Commissioner of Internal Revenue, finding the appellant liable for certain deficiencies in income and profits taxes for the years 1918, 1919, and 1920.

The controlling issue in the case is whether during these years the appellant was entitled to classification as a "personal service corporation," under the Revenue Act of 1918, 40 Stat. 1057–1152. The appellant claimed assessment under that classification, but the claim was denied by the Commissioner of Internal Revenue, and appellant was taxed at the rates applicable to ordinary business corporations. The action of the Commissioner was sustained by the Board of Tax Appeals; hence the present appeal.

Under the provisions of titles 2 and 3 of the Revenue Act of 1918, so-called "personal service corporations" were exempted from the taxes which were imposed upon ordinary business corporations, and the individual stockholders thereof were taxed in the same manner as members of partnerships. The term "personal service corporation" was defined by section 200 of the act (40 Stat. 1058) as follows, to wit:

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor. * * * *"

The decisive question, therefore, is whether the present corporation responded to the foregoing description in the years 1918, 1919, and 1920:

During the years in question the corporation was engaged for profit in the business of preparing and issuing abstracts and certificates of titles for real estate situate in Cuyahoga county, Ohio. For this purpose the corporation owned and used a so-called "abstract plant," consisting of records maintained in its office containing entries of all transactions affecting real estate titles appearing upon the official records of the county. In order to keep these records up to date, numerous assistants were kept constantly employed at the courthouse to "take off the papers," and these were then copied upon the records at the office. Other employees also served in completing the abstracts and certificates, classified according to the duties performed by them, as examiners, indexing and filing clerks, draftsmen, secretaries, typists and comparers, bookkeepers, and general clerks. During the year 1918, 33 persons were thus employed, at an aggregate cost of $37,232; during 1919, 41 persons were so employed, at a cost of $57,148; and during 1920 there were 75 such employees, at a cost of $113,620. The complete abstract records were very expensive; the cost of building up and developing the business prior to the year 1918 was between $200,000 and $300,000. The authorized capital stock of the company was $200,000, most of which represented the value of the plant. The stock was held by three or four principal stockholders, who were regularly engaged in the active conduct of the affairs of the corporation, and an equal number of minor stockholders. The abstract plant, which was maintained at the office of the corporation, was indispensable in the operation of its business. In the making of an abstract, the data relative to a title would be obtained from the corporation's records by competent employees, and the abstract, when completed, would be passed upon by one of the principal stockholders of the company, or under his inspection.

In our opinion, it follows from these facts that during 1918, 1919, and 1920, the appellant corporation was not one whose income was to be ascribed primarily to the activities of the principal owners or stockholders, although these were regularly engaged in the conduct of the affairs of the corporation. The income was rather to be ascribed to the operation of an extensive business enterprise in which the principal stockholders acted chiefly as managers. The other persons employed in producing the output of the plant greatly outnumbered the principal stockholders and were paid annually an aggregate sum three to five times as much as the principal stockholders. Moreover, these employees were as indispensable to the operation of the plant as were the principal stockholders themselves. See Metropolitan Business College v. Blair (C. C. A.) 24 F.(2d) 176.

We think it equally certain that the corporation was not one in which invested capital was not a material income-producing factor. The plant above described constituted a productive investment capital, without which the corporation's business could not be operated. It is clear that the business was expected to produce a return upon this investment, in addition to the compensation paid to the principal stockholders for their services. See Cotton Hotel Co. v. Bass (D. C.) 7 F.(2d) 900; Hubbard-Ragsdale Co. v. Dean (D. C.) 15 F.(2d) 410, affirmed (C. C. A.) 15 F.(2d) 1013.

The decision now upon appeal is affirmed.