W. B. HARBESON LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33076, 51012. Promulgated October 30, 1931.

*E. Barrett Prettyman, Esq.,* for the petitioner.
*Arthur Carnduff, Esq.,* for the respondent.

544

549

OPINION.

TRAMMELL: Numerous issues were raised by the petitioner in its pleadings respecting deductions claimed by it from income for the taxable years and disallowed by the respondent. At the hearing petitioner conceded the correctness of the respondent's action as to certain of the said deductions, thus abandoning in effect its contentions to that extent. It results from these concessions of the petitioner that the respondent's determinations on those points now stand unchallenged, and further detailed reference thereto is unnecessary here.

Also, at the hearing respondent conceded that the petitioner is entitled to certain claimed deductions in addition to those theretofore allowed. These additional deductions now conceded by the respondent are set out in our findings of fact hereinabove, and will be given effect in redetermining the deficiency.

The issues remaining for consideration may be briefly stated as follows: (1) Disallowance by the respondent of a deduction in 1923 of $250 claimed on account of alleged loss on the Camp Walton News; (2) disallowance by the respondent of a deduction claimed from

income for 1921 on account of the cost of two Ford automobiles in the amount of $1,060.50; (3) disallowance by the respondent of a claimed deduction from income for 1921 on account of repairs to track scales in the amount of $820.96; (4) disallowance by the respondent of a deduction from 1926 income claimed as an advertising expense paid through a chamber of commerce; (5) disallowance by the respondent of a deduction from 1926 income of the amount of $801.69 expended in said year by the petitioner for the personal comforts of an officer of the company in connection with his residence; (6) disallowance by the respondent of deductions in 1927 on account of two alleged bad debts in the total amount of $4,881.05; and (7) the correct allowance for depreciation and depletion in each of the taxable years. These issues will be discussed in the order above set out.

*Issue (1).* The petitioner made no reference to this issue in its brief, nor offered any evidence thereon at the hearing. For lack of proof to show error, the action of the respondent is, therefore, approved.

*Issue (2).* The petitioner claimed a deduction from income for 1921 in the amount of $1,060.50 representing the cost of two Ford automobiles. The evidence shows that one of the automobiles was used by the petitioner's land man who looked after all of its logs, and the other was used by the logging superintendent in the woods. It is further shown that these automobiles were completely worn out and junked in approximately six months from the date of purchase. Respondent disallowed the claimed deduction on the ground that these automobiles were capital expenditures.

Capital expenditures ordinarily result in the acquisition of assets having periods of useful life in excess of one year, and in such cases the cost is returnable through deductions for depreciation spread over such periods, as the assets are worn out or consumed in the process of earning income. Where the period of useful life is one year or less, that is, where the asset is worn out and discarded within one year of its purchase, the entire cost is deductible from the income of that year, whether the expenditure be designated as expense or capital. We think the amount here in question constituted an allowable deduction from the petitioner's income for 1921. On this issue the respondent's action is reversed.

*Issue (3).* The petitioner also claimed, and respondent disallowed on the same ground as assigned in the preceding issue, a deduction from its 1921 income in the amount of $820.96 representing cost of repairs to its track scales. These scales were a part of one of the petitioner's sawmill plants at the time acquired by the petitioner, and were subject to inspection of the railroad company, which re-

quired that the scales be properly maintained in order for the petitioner's weights to be accepted. It is shown that these scales were not rebuilt in 1921, but were merely repaired. We think the evidence establishes that the expenditure in question represents maintenance expense, and is an allowable deduction. The respondent's action on this issue is reversed.

*Issue (4).* The petitioner claimed a deduction of $750 for alleged advertising expense, from its income for 1926, which deduction was disallowed by the respondent with the following explanatory statement.

Advertising $750.00. Chamber of Commerce advertising fund. Amounts expended for advertising other than trade advertising are not deductible from income.

The petitioner offered no evidence on this issue, but stated its position thereon at the hearing as follows:

The petitioner concedes the fact stated in the sixty-day letter in regard to that item that this was the Chamber of Commerce Advertising Fund but claims that the adjustment is erroneous upon the face of the sixty-day letter and it is unnecessary for us to submit any proof or any argument in regard to it, resting our contention on that item on the face of the sixty-day letter.

The petitioner in its brief argues that if it is established that a given item is in fact an advertising expenditure, it is an ordinary and necessary business expense, and its deductibility necessarily follows. The facts admitted are so meager as to throw no light on the circumstances surrounding the alleged expenditure, nor is it clearly shown that the amount in question constituted a business expenditure rather than a donation. While it was claimed by the petitioner as an advertising expense, it was disallowed by the respondent as such, and the explanatory statement of the latter merely contains the ambiguous words " Chamber of Commerce advertising fund." We do not know to what chamber of commerce the amount was contributed, where it was located, what relation it bore to the petitioner's business, nor when or in what manner the fund was expended, if in fact it was expended. These facts were undoubtedly within the knowledge of the petitioner's officers, and apparently could have been easily established, since one of its principal executives was present and testified at the hearing. However, the petitioner offered no explanatory testimony, but contented itself with admitting the bare facts stated by the respondent in his deficiency notice. From the very meager facts so stated and admitted, we can not say that error is shown on the face of the record. Respondent's action on this issue is therefore approved.

*Issue (5).* This issue is in substantially the same situation in respect of proof of error as the preceding one. The respondent dis-

allowed a deduction from the petitioner's 1926 income in the following language:

Residence expense $801.69. Expenditures incurred for the personal comforts of an officer of the company and form no part of the corporate expense.

At the hearing, petitioner's counsel stated in this connection:

The petitioner concedes the fact stated in that sixty-day letter in regard to that item, that is, that these were expenditures incurred for the personal comfort of an officer, but claims on the face of that statement the deduction is a proper one and the disallowance is improper upon the face of the sixty-day letter, since, if these were expenditures incurred for the personal comforts of an officer they must necessarily be and form an additional compensation, and therefore they are deductible to the corporation.

In addition to what we have said in connection with the preceding issue, so far as applicable here, it may be pointed out that section 234 (a) (1) of the Revenue Act of 1926 provides for the deduction of all ordinary and necessary corporate expenses, including a *reasonable allowance* for salaries or other compensation for personal services actually rendered. No evidence was offered on the present issue, other than as above indicated. We do not know the nature and extent of the services rendered by the petitioner's officers in the taxable year, nor what salaries or other compensation were paid to them for such services. Even if it be conceded that the expenditure in question constituted additional compensation for services rendered, we can not say that the disputed item, in connection with the other amounts paid to the officers, if any, represented reasonable compensation for personal services actually rendered. For lack of proof to show error, the action of the respondent on this point is approved.

*Issue (6).* In 1927 the petitioner charged off its books as worthless a debt owing to it by the Maxwell Lumber Company of St. Petersburg, Fla., in the amount of $3,181.05, and also charged off as worthless in the same year a debt owing to it by the Hall Lumber Company of Auburndale, Fla., in the amount of $1,700. The petitioner claimed a deduction from its 1927 income on that account in the aggregate amount of $4,881.05, which deduction respondent disallowed. We think the record establishes that the petitioner made reasonable efforts to collect these two debts, and was justified in charging them off as worthless in 1927. The respondent's action on this issue is reversed.

*Issue (7).* Depreciation and depletion are the major issue in these cases, and relate to all of the taxable years. Deductions allowable for both depreciation and depletion can be computed from the same factors; hence the separate consideration of depletion is unnecessary.

The parties have agreed that the deductions in question shall be computed for all years by the unit-of-production method. To that

end, they have also stipulated (1) the depreciated cost of the petitioner's sawmill plants at January 1, 1920, the beginning of the first taxable year, and the salvage values; (2) the cost of additions made to the plants during the taxable years; (3) that the plants were acquired subsequent to March 1, 1913, and hence no question of value at that date is involved; and (4) the amount of timber cut by the petitioner's plants during each of the years from 1920 to 1930, both inclusive. All the factors have thus been stipulated, except two. The parties are in disagreement only as to the amount of the timber acquired by the petitioner during the taxable years, and as to when the timber so acquired became available for the purpose of computing the deductions.

The parties stipulated that 184,045,193 feet were cut at the De-Funiak plant during the years 1920 to 1930, both inclusive. At the end of 1930 the evidence establishes that an accurate cruise was made of the timber remaining, which disclosed 16,393,000 feet. The actual total acquired to the end of 1930 was, therefore, 200,438,193 feet. Our next problem is to determine when this timber became available, and this can be done only by reference to the petitioner's record of purchases as shown by its books. No difficulty would be presented if the books showed the above figures, but they disclosed an apparent total of 255,991,556 feet. However, there were included in this book total 11,052,800 feet designated "exchanges" which the petitioner now concedes were not additional acquisitions but were in fact reductions. Since this amount was added in the above mentioned total and treated as an acquisition instead of as a reduction, the apparent total of 255,991,556 feet must be reduced by 22,105,600 feet, or twice 11,052,800 feet, leaving 233,885,956 feet. This latter amount must be further reduced by 12,500,000 feet, representing the Russ & Wickersham tract, which was purchased in 1928, has not yet been cut, and was not included in the cruise estimate of 1930. This leaves 221,-385,956 feet as the total acquisitions shown by the books. Since the total actual acquisitions, as above pointed out, amounted only to 200,438,193 feet, it is evident that the book figures were excessive to the extent of 20,947,763 feet.

We must next determine from the record where this excess occurred. The evidence affirmatively shows that all tracts were correctly entered on the books and actually cut out substantially according to the book figures, except the Walton, DeFuniak, and Geneva tracts. No cruise was made of these tracts at the time of purchase, but the timber content was estimated by dividing the purchase price by $5 per thousand feet. A shortage from the book figures was physically demonstrated when these tracts were cut. We are satisfied from the evidence and have so found that these three tracts were entered

554

on the books as containing 20,947,763 feet in excess of the actual timber contained thereon. It merely remains therefore to allocate the excess in the book figures to these three tracts, which we have done on the basis of estimates made from the cruise of contiguous tracts in 1930. The results are set out in our findings of fact hereinabove.

We have also found as a fact that the timber purchased by the petitioner in the taxable years did not become available until the respective dates of purchase. Much evidence was offered by the petitioner on this point, which we think clearly justifies the finding made. It is shown that these tracts were previously owned by other lumber companies, or by turpentine operators or others, under such circumstances that the petitioner could not reasonably have anticipated, prior to actual purchase, that it would ever be able to acquire such timber for cutting. The situation here is similar to that discussed by us in *Colmer-Green Lumber Co.*, 12 B. T. A. 256, and in *McClure Pine Co.*, 20 B. T. A. 560. See also *Bacon-McMillan Veneer Co.*, 20 B. T. A. 556.

*Judgment will be entered under Rule 50.*