## HOTEL KINGKADE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3968.

United States Court of Appeals
Tenth Circuit.

Feb. 10, 1950.

---

John E. Marshal, Oklahoma City, Okl., for petitioner.

Carlton Fox, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

This petition to review a decision of the Tax Court presents the question whether in determining the liability of Hotel Kingkade Company for income and declared value excess-profits taxes certain expenditures were deductible from gross income as ordinary and necessary expenses in carrying on a trade or business.

Section 23(a) of the Internal Revenue Code, 26 U.S.C.A. § 23(a), provides in presently material part that in computing net income there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. And section 29.23(a)-4 of Treasury Regulation III provides in substance that the cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life but keep it in ordinary efficient operating condition may be deducted as expense, provided the plant or property account is not increased by the amount of such expenditures; and that repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, should be charged against the depreciation reserve if such account is kept.

In 1910, Andrew Kingkade leased to L. Rardin and C. T. Williams for a term of ten years a hotel building then under construction in Oklahoma City, Oklahoma, and afterwards known as the Kingkade Hotel. The construction of the building was completed in 1911; the lessees furnished and equipped it for a hotel; and they opened it for business. In 1912, Kingkade Hotel Company, hereinafter referred to as the owning company, was organized to acquire and during that year did acquire from Andrew Kingkade the building and the lease covering it. The lessees failed in business, and in 1914 the owning company acquired the furnishings and equipment which the lessees had installed in the hotel. In 1923, the owning company acquired the Bristol Hotel in Oklahoma City, completely furnished; in 1933, the owning company acquired the Ewell Hotel in Oklahoma City, unfurnished, with garage and parking lot; and since such dates the owning company has owned the three properties. In 1914, Hotel Kingkade Company, hereinafter referred to as the taxpayer, was organized for the purpose of operating the Hotel Kingkade. On April 28, 1914, the lessees assigned to the taxpayer the lease covering the hotel; and since that time, the taxpayer has operated the hotel. At all times after the lease expired in 1920, the taxpayer oper-

ated the hotel pursuant to an oral understanding with the owning company that the rental would be in accordance with the ability of the taxpayer to pay rent, depending on the amount of its profits. Since 1923, the taxpayer also operated the Bristol Hotel in accordance with such arrangement. And since 1933, it has operated the Ewell Hotel, garage, and parking lot under similar arrangement, all subject to an understanding however that the taxpayer would pay the cost of repairs and maintenance and pay the balance of its income to the owning company as rent. Pursuant to such understanding, the taxpayer currently paid its profits to the owning company as rental unless some portion thereof was retained as a reserve to meet some anticipated expense. In 1942, the owning company was out of debt and permitted the taxpayer to retain some of its profits to create a cash reserve to meet operating requirements in later years. The controlling stock interest in the owning company and in the taxpayer was held by Andrew Kingkade and his wife, their son, and the son's wife and daughter.

In 1944, 1945, and 1946, the taxpayer expended $9,310.48, $5,497.16, and $3,959.66, respectively, for carpets, rugs, padding under carpets, refrigerator with ice maker, reflue and repair heating and water boilers, closet tanks, bowls, pipe, toilet covers, cloth material, dishwasher, adding machine, fire hose and appliances, electric fans, roofing and sheet metal contracts, cooking ranges, potato peeler and trays, and tile work on kitchen walls and showers. Virtually all of the equipment thus purchased was to replace like equipment which had become worn out and had to be discarded. All of the expenditures were treated on the books of the taxpayer as current repairs, replacements, and maintenance, and were charged to expense. In its income and declared value excess-profits tax returns, the taxpayer treated such expenditures as expenses deductible from gross income under the provisions of section 23(a) (1) (A), supra. The Commissioner determined that the amounts claimed as deductions for repairs and maintenance constituted capital expenditures and therefore were not deductible as business expenses. The Tax Court sus-

tained the action of the Commissioner, and the taxpayer seasonably sought review. The taxpayer does not complain of the decision of the Tax Court in respect to the expenditure for repair of the roof, but in all other respects the decision is challenged.

◼ It is not always easy to draw the boundary line between capital outlays and current expenses. The problem sometimes presents difficulty. In some instances an expenditure should be classified as one or the other depending upon the exercise of judgment in the light of the pertinent circumstances and the application of good accounting principles. Generally, an expenditure should be treated as of a capital nature if it brings about the acquisition of an asset having a period of useful life in excess of one year or if it secures a like advantage to the taxpayer which has a life of more than one year. And in order to constitute an ordinary and necessary expense deductible from gross income under section 23(a), the expenditure must relate to the carrying on of the business, it must arise in the normalcy of the particular business, and it must be incurred in the usual course of the operation of the business. It may be unusual and it may seldom recur. But it must be customary and of frequent occurrence in the type of business involved. Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Hales-Mullaly v. Commissioner of Internal Revenue, 10 Cir., 131 F.2d 509.

◼ These expenditures were not customary and of frequent occurrence. They were not incurred or made for incidental repairs which neither added to the value of the property nor appreciably prolonged its life as a hotel but merely kept it in an ordinarily efficient operating condition. Some were for repairs of a permanent nature which materially added to the value of the property and appreciably prolonged its life as an operating hotel; and others were for replacements of furnishings and equipment having a useful life in excess of one year. They were expenditures of a capital nature, not ordinary and necessary expenses incurred and paid in carrying on a trade or business. Parkersburg Iron & Steel Co. v.

Burnet, 4 Cir., 48 F.2d 163; Fire Companies Bldg. Corporation v. Burnet, 61 App. D.C. 104, 57 F.2d 943; Beaudry v. Commissioner of Internal Revenue, 2 Cir., 150 F.2d 20.

But the taxpayer argues that it did not make the expenditures for the purpose of increasing the value of the property. It says in effect that not being the owner of the property it had no interest in increasing its value. It stresses the point that it made the expenditures for the purpose of keeping the premises in first class condition, as required by the lease, and that therefore the expenditures were not capital in nature. The taxpayer was lessee of the property. Except as to the roof, the written lease provided that the lessees should keep the building and appurtenances in first class condition and should surrender the premises at the end of the term in as good condition as the reasonable use thereof would permit. But that provision did not obligate the taxpayer to make at its own expense repairs or furnish replacements and equipment of the kind and to the extent involved here. The lease also provided that the lessees should conduct a first class hotel in the premises. But that provision had reference to the management and operation of the hotel rather than extended repairs, replacements, furnishings and equipment. The expenditures were capital in nature rather than ordinary and necessary expenses incurred in the carrying on of a trade or business, even though the taxpayer was merely an operating lessee of the property. Duffy v. Central R. Co., 268 U.S. 55, 45 S.Ct. 429, 69 L.Ed. 846; Yeager v. United States, 59 App.D.C. 11, 32 F.2d 402.

▮ Another contention of the taxpayer is that extending over a long period of years prior to the years in question in keeping its books and records and in making its income tax returns it consistently followed the practice of treating as expenses expenditures made for repairs, replacements, and maintenance; that such practice was not challenged prior to the years in question; and that in the circumstances it would be highly unfair to the taxpayer to change its method of accounting. In effect, the taxpayer seeks to invoke the doctrine of estoppel against the Commissioner to treat the expenditures in question other than as necessary and ordinary expenses, within the purview of section 23(a) of the Internal Revenue Code. Section 41 of the Internal Revenue Code, 26 U.S.C.A. § 41, provides among other things that net income shall be computed on the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed in keeping the books of the taxpayer; but that if the method does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect it. The record is sketchy in respect to the nature and extent of repairs, replacements, and maintenance for which the taxpayer claimed deductions as ordinary and necessary expenses in earlier years. But assuming that they were fairly comparable to those involved here, the practice of the taxpayer in deducting as ordinary and necessary expenses the expenditures made for them was not the correct method of treating such expenditures; and to the extent that such deductions entered into the ultimate result, the returns did not clearly and accurately reflect net income subject to tax. The returns were accepted without challenge, but the acceptance of them did not preclude the Commissioner from insisting that a method be used for the years in question which would clearly reflect the income. Niles-Bement-Pond Co. v. United States, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901; Mt. Vernon Trust Co. v. Commissioner of Internal Revenue, 2 Cir., 75 F.2d 938, ceriorari denied 296 U.S. 587, 56 S.Ct. 99, 80 L.Ed. 415.

▮ The taxpayer advances another contention. It is that the expenditures made for the repairs, replacements, furnishings, and equipment in question included sales tax imposed by the State of Oklahoma; that such sales tax was an allowable deduction under section 23(c) of the Internal Revenue Code, 26 U.S.C.A. § 23(c); that the vouchers before the Commissioner at the time he disallowed the deductions as ordinary and necessary expenses disclosed on their face that the sales tax was

314

included; and that the amount of the sales tax should have been allowed as a deduction under section 23(c). But that question was not before the Tax Court. The only question presented to the Tax Court was whether the taxpayer was entitled to deductions on account of ordinary and necessary expenses incurred and paid in carrying on its trade or business. No effort whatever was made to segregate the sales tax and treat it separately as deductible under section 23(c). The taxpayer having failed to present the question to the Tax Court, and that court not having decided it, we will not consider it on review. Tulsa Tribune Co. v. Commissioner of Internal Revenue, 10 Cir., 58 F.2d 937; Roerich v. Helvering, 73 App.D.C. 13, 115 F.2d 39, certiorari denied 312 U.S. 700, 61 S.Ct. 740, 85 L.Ed. 1134; Commissioner of Internal Revenue v. Burnett, 5 Cir., 118 F.2d 659; Bank of California v. Commissioner of Internal Revenue, 9 Cir., 133 F.2d 428; Bennett v. Commissioner of Internal Revenue, 8 Cir., 139 F.2d 961.

The decision of the Tax Court is affirmed.