OPINION'. HaeRON, Judge: The issue relates to the matter of the proper treatment for tax purposes of an expense which petitioner incurs and pays in cash each year to real estate brokers, chiefly, for preliminary title reports and copies of noncurrent title insurance policies which have been prepared and used previously by others in the same business. For convenience such material is described hereinafter, collectively, as starter reports. It is understood that for the most part each of the starter reports acquired deals with the status of the title to an individual and different piece of real estate up to a date which is prior to the time of petitioner’s purchase, although petitioner concedes that there are instances of purchasing more than one report which relates to the' same piece of property, in which event there is some duplication of starter reports which are purchased. It is understood, further, that the petitioner makes no effort to ascribe a purchase price to each individual starter report which it acquires; that sellers of such reports do not fix a price for each report sold to petitioner; that petitioner pays a lump sum periodically (usually monthly) for several reports; and that during a year an undisclosed number of starter reports are purchased. Thus, for example, the record does not show how many reports petitioner purchased in 1952 for $6,896, or in 1953 for $8,581, or in 1954 for $7,584. It is understood, also, that the petitioner concedes that “the bulk” or most of the reports which it purchases in a year are not, during the same year as the expense is incurred and paid, made use of in the searches, examinations, and writing of abstracts of title on individual pieces of real estate, but, rather, are filed away in petitioner’s files of records for future use, if, as, and when petitioner should write abstracts of the title to any of the properties covered by such starter reports. It is noted at the outset, in addition, that the record does not show anything about the fees, or rates of charges, which petitioner receives for a title abstract, or what elements enter into its costs of making the search, the examination, and finally writing a title abstract. For example, the petitioner does not contend, where it makes use of one of the purchased starter reports on the title to a piece of property in its search and writing of a title abstract which is brought up to the date of the closing of a real estate transaction, that it includes in its charge for its completed abstract any amount as its cost of the purchased starter report. The facts have been set forth fully in the Findings of Fact and with the foregoing summary of certain relevant factors, the circumstances within which the issue to be decided arises is, we think, clear. The primary question is whether the total amount of expense paid in each taxable year is a nondeductible capital expense under section 24(a)(2), or ordinary and necessary business expense deductible under section 23(a) (1) (A). For convenience, reference is made to the applicable sections of the 1939 Code. The corresponding provisions of the 1954 Code are substantially the same. In substance, it is the petitioner’s view that the expense of purchasing starter reports which, for the most part, are held in expectation of future use, is comparable to the expense of maintaining its title plant, a capital asset, in good and efficient working condition. Having such starter reports on hand, argues the petitioner, later saves time and expense in writing a particular title abstract. Such alleged maintenance expense is claimed by the petitioner to be of the same nature as ordinary maintenance expenditures which do not benefit future periods and are, therefore, properly charged to operations in the year the expenses are incurred and paid, and are deductible as ordinary and necessary expenses of petitioner’s business. The petitioner does not cite any case specifically dealing with the issue to be decided. However, petitioner relies largely upon the respondent’s O.I). 1018 (1921), 5 C.B. 119, set forth in the margin.[1] Whether a given expense is an ordinary and necessary business expense deductible from gross income in the year of payment under section 23(a) (1) (A), or whether it constitutes an amount paid for an asset, or an addition to assets, or a betterment which increases the value of assets so as to be not deductible under section 24(a) (2) is a question of fact. Russell Box Co. v. Commissioner, 208 F. 2d 452, 454. It is often a difficult matter to draw the line between a capital outlay and one for current maintenance. Hotel Kingkade v. Commissioner, 180 F. 2d 310, 312. It is helpful to bear in mind, nevertheless, the basic distinction between an ordinary and necessary business expense and a capital expenditure. In this connection, the following statement of the fundamental distinction, stated in Kester, Principles of Accounting, p. 130, is helpful: Asset and Expense Expenditures. — At the time of organization of a business, the capital contributed by the owner is expended to acquire the necessary assets with which to carry on the business. A fundamental distinction must be made between expenditures for the purchase and installation of the assets themselves and expenditures for expenses in connection with their repair, maintenance, and upkeep. An asset account is chargeable with all costs incurred up to the point of putting the asset in shape for use in the business. It may be charged also with subsequent expenditures resulting, in an increase in its value. Such increase is frequently termed a betterment. Expenditures, however, which are for the purpose of repairs or of keeping the property from too rapid depreciation without adding anything to its original value, must be charged to a properly labeled expense account. These expenditures for expenses, such as repairs, maintenance, upkeep, together with depreciation, are subtractions from profit and proprietorship, while asset expenditures usually constitute an exchange of the asset cash for some other asset, which exchange has no effect on proprietorship. These expenditures are frequently distinguished as capital and revenue expenditures. After fully considering the complete record and petitioner’s contentions and arguments, it is concluded that total expense of purchasing starter reports in each of the taxable years, incurred and paid in each year, is a nondeductible capital expense which properly is to be charged to petitioner’s asset account for its title plant as an expenditure which increases the title plant’s value and is for betterment thereof, in general. Upon all of the facts and under all of the circumstances, it cannot be found and held that the respondent erred in disallowing the claimed deduction in each year. Petitioner contends, and it may be conceded, that as of the end of 1951 it had an established title plant, the cost of which had been capitalized. Petitioner agrees that the records which constitute a title plant are capital assets, as is now well established. See The Record Abstract Co., 2 B.T.A. 628, 631-682; Cuyahoga Abstract Title & Trust Co., 7 B.T.A. 95, 98-99, affd. 29 F. 2d 448, certiorari denied 279 U.S. 848; Crooks v. Kansas City Title & Trust Co., 46 F. 2d 928. Petitioner, however, is in error in its contention that since it had a title plant, the expense of purchasing previously prepared starter reports for title abstracts necessarily is a maintenance and, therefore, current operating expense. It is admitted that the value of the starter reports extends beyond the year of purchase and continues until such time in some indeterminate future year as petitioner shall have the occasion to write an abstract on a title covered up to a point by a starter report. The time of future use may be many years later. We think it is clear beyond any doubt that the starter reports have an economic life extending beyond the year of purchase and that they represented additions and supplements to the plant which increased its value. It is a generally accepted rule that an amount expended for an asset having a useful life which is not consumed in the year of the expenditure is usually to be classified as a capital item. First National Bank of St. Louis, 3 B.T.A. 807; W. B. Harbeson Lumber Co., 24 B.T.A. 542. Petitioner’s reliance upon respondent’s O.D. 1018 is misplaced. First, it must be observed that an Office Decision of the Commissioner lacks the status of a regulation and ordinarily must be regarded as having limited weight circumscribed by its particular facts. O.D. 1018 refers to the expense of obtaining “records that are being made daily in various courts and in the Recorder’s office” which title abstract companies continuously incur. Petitioner incurs the kind of expense described in the cited ruling by its continuous subscription to Edwards Abstracts which furnishes such daily records of the courts and the Recorder’s office in San Francisco County. The expense under consideration here of purchasing starter reports is not the same and is distinguishable from the kind of expense described in the ruling. A starter report covers a search and examination of title and while it does not have the coverage of a completed abstract, it is within the same general category. O.D. 1018 does not refer to reports on title. The petitioner advances another argument which deals with the limitation contained in section 12372 of the California Insurance Code on a title insurer’s valuation on its plant as an asset. Petitioner contends that since one of the provisions of that statutory provision limits the valuation of its title plant to actual cost, not to exceed 50 per cent of the total par value of its outstanding capital stock, it could not, after 1951, add to the then cost of its plant the amount expended in each year for starter reports. This contention has no relevance here and is without merit. Section 12372 of the Insurance Code deals inter alia with ¡an insurer’s financial statement. It provides, also, in subsections (b) and (c) that an insurer may, in its statement, treat its plant as an asset having a lesser value than 50 per cent of the par value of outstanding stock, as allowed in (a); or it may omit entirely from the statement such asset. In any event, the cited provision of the California Insurance Code does not in any respect bear upon, relate to, or control the question here which arises under the Federal Internal Revenue Codes. Cases cited by the petitioner have been considered but they are distinguishable. Consolidated Apparel Co., 17 T.C. 1570, affirmed and reversed in part on other grounds 207 F. 2d 580, is distinguishable from this case in that the expense there, advertising expense, was clearly an item which properly can be expensed. In view of the conclusion reached under the main issue it is unnecessary to consider an alternative contention of the respondent that the petitioner, by deducting the expense in question in 1952, which it previously had capitalized, changed its method of accounting without first obtaining the respondent’s consent. The determinations of the respondent are sustained. Decision wül he entered for the respondent. O.D. 1018 is as follows: Title abstract companies incur relatively large and continuous expenditures in keeping their plants up to date, such as the expense of adding and incorporating in the plant records that are being made daily in the various courts and in the Recorder’s office. These records which are added to and incorporated in the plant for the purpose of keeping it in up to date running order and preventing depreciation are in the nature of ordinary and necessary repairs. The expenses, therefore, incurred in making such records are current expenses, and as such are deductible for the years in which incurred and paid or accrued. Since a title plant is not an asset of a nature which gradually approaches a point where its usefulness is exhausted, but is an asset of a more or less permanent character, it is not a proper subject of a depreciation allowance.