## BENNETT et ux. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12605.

Circuit Court of Appeals, Eighth Circuit.

Jan. 17, 1944.

Rehearing Denied Feb. 8, 1944.

---

R. Shad Bennett, of Clayton, Mo., for petitioners.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before THOMAS and JOHNSEN, Circuit Judges, and MOORE, District Judge.

THOMAS, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States redetermining the tax liability of petitioners for the taxable years of 1936 and 1937. The taxpayers are husband and wife. They filed joint income tax returns for the taxable years. Their books were kept and their returns were filed on the cash receipts and disbursements basis.

Bennett is a lawyer and business man. His wife owns a considerable estate invested largely in securities. During 1936 and 1937 he maintained an office in the Telephone building in Saint Louis, Missouri, in space subrented from another lawyer. The office served as headquarters for all of his legal and business activities.

Petitioners allege that the Tax Court erred (1) by refusal to allow deductions (a) for office and traveling expenses, (b) for automobile insurance, (c) for loss of a $10,000 mortgage, (d) for loss of a lot in West Palm Beach, Florida, (e) for loss in a trading account, (f) for depreciation on rental property; (2) by including in income (a) gains from a trading account and (b) dividends paid to a broker; (3) by approving a negligence penalty; and (4) by denying claimed earned income.

The deductions claimed for office and traveling expenses are for the most part related to Bennett's law practice. His gross income from the practice of law in 1936 was $400 for work done for his landlord, the entire amount of which was applied on the office rent. The Tax Court allowed additional office expenses aggregating $1170.50 and refused to allow claimed expenses aggregating $1458.45. Some of the items were disallowed for lack of proof and others because they were not "ordinary and necessary expenses" within the meaning of the applicable statute, § 23(a) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev. Acts, page 813.

The petitioners assign the refusal of the court to allow these items as error; but they fail to point out wherein the court erred.

The burden is upon a taxpayer to establish a deductible loss or expense and the amount of it. Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991; Botany Mills v. United States, 278 U.S. 282, 289, 290, 49 S.Ct. 129, 73 L.Ed. 379. The Commissioner's determination is presumably correct, and when supported by the findings of the Tax Court, the taxpayer upon appeal should point out specifically wherein the court erred. We have examined the record with care and we find no mistake in the reasoning, or in the findings and conclusions, of the Tax Court upon this issue. See Acer Realty Co. v. Commissioner, 8 Cir., 132 F.2d. 512, 514.

At the hearing before the Tax Court petitioners claimed an allowance of $83 for automobile insurance as a business expense during 1936. The Tax Court found from the evidence that the automobile was used chiefly but not wholly for business purposes. In their 1936 return petitioners claimed a deduction for this item in the amount of $53.50 which the Commissioner disallowed and the Tax Court allowed. The petition for review alleges error for refusal to allow the entire claim for $83.

The taxpayers fail to sustain the burden of showing that the court erred.

In their petition to review the taxpayers allege that the court erred "in refusing to allow a deduction of $10,000 for loss of a mortgage on property in Coral Gables, Florida." The facts found by the Tax Court are not disputed. In summary they are that in 1927 Bennett loaned a Florida corporation $10,000 for which he took a note dated March 22, 1927, payable on or before five years with interest at 8% and secured by a first mortgage on four lots situated in Coral Gables, Florida. Interest was paid for about two years when, due

to bankruptcy or the imminence thereof, title to the lots was transferred to another corporation which continued the payment of interest until 1931 or 1932. Interest payments were then discontinued. Due to the insolvency of the maker Bennett did not foreclose the mortgage.

For approximately $3,000 Arthur McBride acquired tax sale certificates on the lots for undisclosed years, and in August, 1936, brought suit in the state court to foreclose them. Bennett was named a defendant. After investigating the possibility of redemption he concluded that it would be "uneconomic" for him to do so. In the fall of 1936, in consideration of the payment to him of $100 by McBride, Bennett entered his appearance in the suit and delivered the note and mortgage to McBride's attorney "in order to expedite the proceeding and to save himself any cost in connection therewith." Bennett denied that he sold the note and mortgage in 1936 for $100, and claimed loss for the face of the note without deduction of the amount received.

On December 30, 1936, a final decree was entered in the suit, foreclosing the tax lien and ordering a sale, after giving notice for 28 days, unless there should be an earlier redemption. The decree provided that after the sale Bennett's right of redemption would be barred. The sale was confirmed on March 24, 1937.

Except the $100, Bennett never received anything further for the note and mortgage.

The Tax Court held that both the Commissioner and Bennett had proceeded upon the erroneous theory that the deduction, if any, was allowable under the loss provisions of the statute, whereas, if deductible at all, it was allowable under the bad debt provisions. Applying the bad debt rule the court refused to allow the deduction in 1937 because on the evidence presented the debt became worthless, and Bennett ascertained it to be so, in some year prior to 1936.

■ Neither the Tax Court nor this court is bound by the theory of the Commissioner. If the disallowance of the deduction is right it should be affirmed by the application of the correct rule of law. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037.

■ Bennett asks this court to decide whether the loss he sustained was deductible under the loss or the bad debt provision of the statute. We think the position taken by him before the Tax Court was decisive. If he did not sell the note and mortgage to McBride in the fall of 1936, what he did sell was merely the nuisance value of his right of redemption from the tax foreclosure sale, and there is no evidence to show that such right was worth more than the $100 he received for it. The $10,000 debt evidenced by the note became worthless in his judgment, as shown by his conduct, prior to 1936. No interest had been paid for four years prior to 1936; he had not thought it worth while to pay taxes on the lots; and as early as 1929 or 1930 he knew that the maker of the note was insolvent. The evidence supports the finding of the court. The decision of the Tax Court must, therefore, be affirmed. Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343.

In 1925 Mrs. Bennett loaned one E. B. Donnell $4,200, for which she received two notes of $2,100 each, secured by a mortgage on an unimproved lot in West Palm Beach, Florida. Donnell failed to pay the notes when due, and in 1927 the taxpayers instituted foreclosure proceedings against William F. Stieff, who had become the owner of the lot subject to the mortgage. The proceedings were dismissed under an agreement whereby the taxpayers delivered the notes to Stieff in return for a conveyance of the lot subject to all unpaid taxes subsequent to 1924.

On December 31, 1936, an owner of tax sale certificates against the lot instituted a foreclosure proceeding against the taxpayers in a Florida state court. In March, 1937, pursuant to the court's decree, the lot was sold by a special master after the taxpayers had defaulted in payment of the amount owing by them on the certificates.

In their 1936 return the taxpayers took a deduction of $4,000 as a loss on the lot. The Commissioner disallowed the deduction. In their petition to the Tax Court they claimed a loss of $4,200 for 1937 instead of for 1936. At the hearing before the Tax Court they took the position that the loss of $4,200 was sustained in 1936.

The Tax Court held that it was immaterial whether the petitioners sustained the loss in 1936 or in 1937 because the Commissioner's disallowance should be sustained in any event. The grounds for that hold-

ing were that the basis for determining any loss on the disposition of the property is its fair market value on the date of acquisition and that the Tax Court was unable to find from the evidence that the lot had any value at the time it was acquired in 1927 in excess of the taxes outstanding against it. Sections 202(a), 203(a) and 204(a), Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, pages 147, 148, 151; Helvering v. Missouri State Life Ins. Co., 8 Cir., 78 F.2d 778.

■ The taxpayers had the burden of showing that the Tax Court's finding that the evidence did not show any value on the lot in excess of outstanding taxes at the date of acquisition by the taxpayers is not supported by substantial evidence. Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991. They have not met this burden.

■ In their brief petitioners say: "We also ask this court to determine, first whether losses in a trading account on the stock exchange carried on for profit may be taken as deductions from income taxes in excess of $2,000.00, either by including the total amount of the losses or by adding to the $2,000.00 the transfer taxes", etc. The question is not properly before us for decision. We, therefore, decline to consider it.

■ No statement of facts or argument is set out in the brief disclosing any issue upon this point. In the opinion of the Tax Court, however, we find that after each party had closed his case before the court petitioners sought to amend their pleadings to show that Bennett had sustained a loss of at least $14,000 in the purchase and sale of securities in 1937 and had claimed a deduction of only $2,000 on his return. It was claimed that under such an issue raised in an amended petition the proof would show that petitioners would have no net income in 1937.

Upon the theory that the proposed amendment would raise a new issue after the case had been closed the court held that the request to amend was untimely and denied the motion. There was no abuse of discretion in so holding. California Brewing Ass'n v. Commissioner, 43 B.T.A. 721; Com'r v. California Brewing Ass'n, 9 Cir., 129 F.2d 321.

■ Petitioners then argued that their petition raised the issue without amendment. This argument was based on the allegation that "Petitioners further claim an adjustment for the taxes paid for the year 1937, due to the fact that the same were erroneously paid and that said sum should in equity be repaid petitioners." We agree with the court that the allegation does not raise the issue presented in the proposed amendment.

In 1926, 1927, and 1928, respectively, Bennett acquired three residential properties in the city of Saint Louis at costs of $15,000, $10,000, and $25,300 each. The first two were rental properties. Bennett expended $16,000 in improvements on the third property and occupied it as a residence until 1934 when it also became rental property.

In their income tax returns for 1936 and 1937 petitioners took a deduction each year in the amount of $1,600 for depreciation on the three properties. For each year the Commissioner allowed $578.37 of the deduction taken and disallowed the balance in the amount of $1,021.63. Before the Tax Court petitioners claimed a deduction for depreciation in each year of $2,130.

At the hearing before the Tax Court the taxpayers submitted evidence of the date of the construction of the residences and of the fair market value of the land on which they were built. The building on the first lot was about 40 years old; on the second, about 50 years old; and on the third, about 30 years old. No evidence was submitted as to the probable useful lives of the first and second buildings at the date of their acquisition nor of the third at the time petitioners ceased to use it as a residence and devoted it to rental purposes. In the absence of such evidence the court held that it was unable to determine the rate or rates of depreciation applicable and sustained the determination of the Commissioner for lack of proof.

The petitioners contend that the court should have determined the useful life of the buildings from the evidence submitted. Section 23(l), 26 U.S.C.A. Int.Rev.Code § 23(l), of the Act provides that in computing the net income there shall be allowed as a deduction a reasonable allowance for exhaustion, wear and tear of property used in a trade or business.

Treasury Regulations 94, Art. 23(1)-1 provides in part: "The proper allowance for such depreciation of any property used

in the trade or business is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan, * * * whereby the aggregate of the amounts so set aside, plus the salvage value, will, at the end of the useful life of the property in the business, equal the cost or other basis of the property determined in accordance with section 113."

The burden was on petitioners not only to show that the Commissioner's determination was wrong, but also to produce evidence from which another and proper determination could be made. Lightsey v. Commissioner, 4 Cir., 63 F.2d 254, 255; Botany Mills v. United States, supra. Except the evidence relating to the age of the buildings there is no proof upon which to base a calculation as to their probable useful economic life, such as the material of which they are constructed, the original cost of construction, and other facts necessary to be considered in making such a determination. Pittsburgh Hotels Co. v. Commissioner, 3 Cir., 43 F.2d 345, 347.

The petitioners rely upon First Nat. Building Corporation v. Jones, D.C. Okl., 36 F.Supp. 682, 683, contending that the Commissioner or the Tax Court must determine the rate of depreciation when the proof shows the age of the property, the type of the property and the physical conditions. The case does not support such contention. There the evidence produced by both parties showed "the useful economic life of the building", and the court considering such evidence and other testimony determined the issue of probable useful life. Here the situation is very different. No opinion evidence was produced and the data in the record is insufficient to support an intelligent guess. Under these circumstances the Tax Court could neither reverse nor modify the determination of the Commissioner.

The petitioners reported capital gains in the amount of $9,192.87 from trading in stocks and bonds during 1937. The Commissioner determined the gains to be $10,139. The Tax Court determined the amount to be $8,984.57. The taxpayers say the correct amount is $7,441.11. No appeal was taken from the finding of the court in respect of this item, but we are asked to inspect the evidence and determine who is right, the court or the taxpayers.

Since no proper appeal has been taken we shall not discuss the issue. We have reviewed the evidence, however, and find that it supports the finding of the court.

Bennett contends that $875 representing dividends paid on his stocks and credited to his margin account by his brokers during 1937 is not taxable income because never received by him for the reason that the account resulted in a loss.

Article 42-2 of Regulations 94 promulgated under the Revenue Act of 1936 provides that "Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession." Since the dividends were paid on Bennett's stocks to his agent and credited on his account with his consent they were constructively received by him. He availed himself of the right to direct their use and received the benefit of a credit for them. Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216; Loose v. United States, 8 Cir., 74 F.2d 147; Foley v. Commissioner, 3 Cir., 94 F.2d 958. The fact that at the time the account was closed he sustained a loss on the sum of his transactions is immaterial.

The Tax Court sustained the Commissioner's determination of a 5% negligence penalty under § 293 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 293, and petitioners object.

Section 293(a) of the Act provides that "If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency * * * shall be assessed, collected, and paid * * *."

Under the statute the imposition of the penalty is dependent upon a finding that some part of the deficiency is due (1) to negligence or (2) to intentional disregard of rules and regulations. A finding that the return is incorrect, or that the taxpayer did not keep proper or complete books of account, or that his calculations are confusing is not enough. Little v. Helvering, 8 Cir., 75 F.2d 436, 439; Plunkett v. Commissioner, 1 Cir., 118 F.2d 644, 650; Board v. Commissioner, 6 Cir., 51 F.2d 73, 76; Bothwell v. Commissioner, 10 Cir., 77 F.2d 35, 38.

The Commissioner based his action upon a finding that the taxpayers failed to keep sufficient records in regard to income and expenditures; claimed a loss on a mortgage without reporting the income derived; and failure to report various items pertaining to income and deductions in the correct amounts; and that such failures constituted negligence or intentional disregard of rules and regulations.

The Tax Court found that Bennett "kept no books and records which would properly reflect his transactions entered into for profit or the results of any business conducted by him and that in making his income tax return he made no serious effort to assemble or organize facts and data essential to making of a proper return", and sustained the penalty.

■ The record shows that the deficiency found to exist resulted from claimed deductions not allowed and from failure to report as income gains from a trading account and dividends paid to a broker. All these items are clearly the result of a mistaken conception of the taxpayers' legal rights. While ignorance of the law is not an excuse for wrongful acts, we think it is distinguishable from negligence within the meaning of § 293. Had the taxpayers been better advised as to their legal rights, and had they kept correct accounts of their business transactions, they might have taken deductions in the proper years for whatever losses were actually sustained by them on the $10,000 and the $4,200 mortgage loans in Florida. We think the Commissioner and the Tax Court erred in respect of the penalty under § 293.

■ The redetermined joint net income of the taxpayers for the taxable year 1936 was fixed at $21,659.18. They were allowed an earned income credit of $1,400, or 10% of $14,000. They contend that they should be allowed 10% of the entire joint net income, or $2,165.90. Petitioners have not shown what part of their adjusted net income for 1936 consisted of earned income. In any event, however, they can not complain. Section 25(a) (4) (C) of the Act, 26 U.S.C.A. Int.Rev.Code § 25(a) (4) (C), provides that "In no case shall the earned net income be considered to be more than $14,000", and § 25(a) (3) limits the credit to 10% of earned income. A joint return by a husband and wife must be treated as a return of a taxable unit and as though made by an individual. Although the earned income of both husband and wife may be aggregated for the purpose of credit the total can not "be considered to be more than $14,000." Section 25(a) (4) (C) of the Act. Compare Taft v. Helvering, 311 U.S. 195, 61 S.Ct. 244, '85 L.Ed. 122, and Art. 25-2 of Regulations 94 as amended by T.D. 5057, 1941-2, Cum. Bull. 97-98. The Tax Court did not err in the computation of the earned income credit.

The decision of the Tax Court is modified by the elimination of the penalty imposed under § 293 of the Act, and as so modified it is affirmed.