Estate of Myrtle P. Dodge, Waldo C. Dodge, Executor, and Waldo C. Dodge, Surviving Husband v. Commissioner.
Estate of Dodge v. Commissioner
Docket No. 83271.
United States Tax Court
T.C. Memo 1961-346; 1961 Tax Ct. Memo LEXIS 5; 20 T.C.M. (CCH) 1811; T.C.M. (RIA) 61346; December 27, 1961
*5 Amount of deductible medical expenses determined. Loss on damage to property not proved. Timothy J. Davern, Esq., for the petitioners. Douglas D. Robertson, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1957 in the amount of $278.68. The issues remaining for decision are: (1) Whether petitioners are entitled to include in medical expense the sum of $253.15 or any other amount paid for medicines and vitamins. (2) Whether petitioners are entitled to deduct as medical care the amount of $410 paid to petitioners' daughter for the care of one of the petitioners. (3) Whether petitioners are entitled to a deduction for damage to property in which one of the petitioners had an interest. Respondent concedes on brief that petitioners are entitled to a deduction of $84 for charitable contributions. Findings of Fact Petitioner Waldo C. Dodge (hereinafter referred to as Waldo) and Myrtle P. Dodge, deceased (hereinafter sometimes referred to as Myrtle), were husband and wife and residents of Beverly, Massachusetts, up to the time of Myrtle's death in November 1957. Waldo is *6 the executor of the estate of Myrtle P. Dodge. A joint income tax return was filed for Waldo and Myrtle for the taxable year 1957 with the district director of internal revenue at Boston, Massachusetts. Petitioners itemized their deductions on their tax return for 1957. They claimed the following items as medical and dental expense: Daily vitamin and low blood pres-
sure medicine
$ 76.65
Medicines
176.50
Dentists
170.00
Glasses
* 32.50
Total
$455.65
Respondent determined that the claimed deduction was not allowable under section 213 of the Internal Revenue Code of 1954. [1]
As "other deductions" on their return petitioners also claimed $410 as separate board and care for Myrtle, who was physically unable to care for herself, and $550 as a casualty loss due to vandalism and theft of certain rental property in which Waldo had an interest. Respondent determined that the $410 was not allowable because it did not constitute medical care, and that the $550 was not allowable because it did not constitute a casualty *7 loss. In 1957, Waldo and Myrtle were 79 and 78 years of age, respectively. Myrtle was severely afflicted with arthritis and required frequent treatment, as well as constant care and assistance, to enable her to walk. She was, in essence, unable to care for herself. On the recommendation of a physician that someone be retained to care for her, Myrtle was moved to the home of petitioners' daughter, Eleanor Soper (hereinafter sometimes referred to as Eleanor). Eleanor, in addition to the general care of Myrtle, provided room and board for her, together with other services required by an aged and severely arthritic woman. Myrtle lived with Eleanor from about July 15, 1957, until she died in November 1957. Waldo paid Eleanor $72 per month for taking care of Myrtle. These payments are substantiated by five canceled checks, each made payable to Eleanor in the amount $72of, totaling $360. A canceled check made payable to Eleanor in the amount of $50 dated April 3, 1957, is found to be unrelated to the services which Eleanor provided for her mother. In addition to the payments of $72 per month, Eleanor also received furniture and furnishings of unknown value as payment for Myrtle's room and *8 board. Eleanor was neither a registered nurse nor a licensed practical nurse. In 1957, Waldo's only business or occupation was real estate and mortgages. He had significant income from this business in addition to unearned income from stocks and bonds. On September 7, 1956, Waldo sold real property consisting of land, a six-family dwelling and outbuildings at 9 Ellerton Street, Revere, Massachusetts, to Edward Lank, and acquired in return a first mortgage on the property. Paul J. Recupero was an endorser of the mortgage note and also lived on the premises with his family. Waldo reacquired title to this property through foreclosure of this mortgage sometime prior to August 1958, at which time he had the building demolished because its potential value did not warrant the expense of repairing it. In December 1957, Waldo discovered that Recupero had abandoned the property and had severely damaged the buildings. He also discovered that Recupero had absconded with certain parts of the property. Floors and underpinnings, water tanks and piping, and furniture had been removed. Extensive damage had also been inflicted on both the inside and the outside of the dwelling and outbuildings. Waldo *9 estimated the value of the damage at $550. He did not repair the building, but as pointed out above, had it demolished in August 1958. During 1957, petitioners paid $168 for medicines and drugs. In addition, they paid $32.50 for eyeglasses, and incurred and paid medical and dental expenses, in excess of the amounts paid to Eleanor, in the amount of $155. Of the $360 paid by Waldo to Eleanor for the care of Myrtle, $180 thereof was paid for medical care for Myrtle and the balance was paid for personal care for Myrtle. Petitioners have failed to prove that they suffered any deductible loss on the property at 9 Ellerton Street, Revere, Massachusetts. Opinion The first two issues involve the amount petitioners are entitled to deduct as medical expense; the first issue being the deductible amounts paid for drugs, medicines, and doctors, and the second issue being the amount, if any, petitioners are entitled to deduct for medical care for Myrtle. Of the $455.65 claimed on petitioners' tax return for cost of medicines, drugs, and doctors, respondent concedes on brief that petitioners are entitled to deduct $187.50 as medical expense. Petitioners proved by canceled checks the payment of $155 *10 to doctors, dentists, and a dental center, and also proved by check the payment of $32.50 for eyeglasses. We have found as a fact that these amounts were spent for medical care and they are deductible in full, both petitioners being over 65 years of age. Sec. 213(a)(2)(A). This falls $15 short of proving the $170 claimed on the return for payments to doctors and dentists, but there is no evidence to support the additional deduction and it is not allowed. The balance of the $455.65 medical expense claimed on the return was the amount of $253.15 for vitamins and medicines. Waldo testified that he arrived at this figure by estimating from his records that he and Myrtle each spent an average of $3.33 per month for vitamins and an average of $7.67 per month each for other medicines and drugs. He then multiplied these figures by 23 (12 months for himself during 1957 and 11 months for Myrtle before she died) to arrive at the total figure of $253.15. While the evidence on this point is not very satisfactory, it does show that Myrtle was suffering from severe arthritis and that both petitioners needed and used drugs and medicines. In view of the ages of the two petitioners, the amount claimed *11 by petitioners does not seem too unreasonable. However, because of the lack of supporting records and the sparsity of the evidence on this point, and to try to avoid possible duplications and errors in Waldo's computations using our best judgment on the evidence before us, we have found as a fact that petitioners spent $168, or approximately two-thirds of the amount claimed on the return, on medicines and drugs during the year 1957. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). The amount of the expenditures for medicines and drugs that may be taken into account in computing the deduction for medical expense is limited to the excess, if any, of $168 over 1 percent of petitioners' adjusted gross income. Sec. 213(b) of the Code, and sec. 1.213-1(b)(2), Income Tax Regs.
The second issue is whether petitioners are entitled to deduct as medical expense the amounts paid by Waldo to his daughter, Eleanor, for room, board, and care of Myrtle in her home for approximately 5 months prior to Myrtle's death. We have found as a fact that the amount paid for this purpose was $360, supported by five checks of $72 each. A sixth check from Waldo to Eleanor in the amount of $50, which purports *12 to support the balance of the $410 claimed on the return, was dated in April prior to the time Myrtle was moved to Eleanor's house, and has not been shown to have been paid for this purpose. The evidence also indicates that Eleanor received some furniture and furnishings in part payment at least for Myrtle's room and board. Respondent argues that none of these payments are deductible because the services rendered therefor do not qualify as medical care, because they were rendered by a person who was not a registered or a practical nurse and who had had no special training in nursing, and because there was no reasonable relationship between the services performed and the cure, mitigation, or treatment of a physical defect or illness, citing L. Keever Stringham, 12 T.C. 580 (1949), affd. 183 F. 2d 579 (C.A. 6, 1950). This Court has recognized that this issue depends on the nature of the services rendered, not on the experience, qualifications, or title of the person rendering them. George B. Wendell, 12 T.C. 161 (1949). Respondent's regulations, sec. 1.213-1(e)(ii), recognize that expenditures for the alleviation of physical defects or illnesses, such as nursing services, are included *13 within the definition of "medical care." The question appears to be one of fact. It is clear from uncontradicted evidence that Myrtle was suffering from severe arthritis prior to her death in 1957 and her physician advised Waldo that she needed someone to take care of her, to help her in and out of bed, to help her walk, and to prevent her from falling and injuring herself while she was moving about. Such services necessitated by Myrtle's physical condition we believe qualify as medical care, even though they were not rendered by a registered or practical nurse. We also believe that a part of the services rendered by Eleanor to Myrtle were of a personal nature unrelated to Myrtle's physical condition, and that the payments received by Eleanor covered such services, as well as the medical care, and probably were also to pay in part at least for Myrtle's room and board. Using our best judgment on the evidence before us, we have found as a fact that $180, or one-half, of the $360 paid to Eleanor for taking care of Myrtle was for medical care. Cohan v. Commissioner, supra.That amount will be included in the computation of the deduction for medical expense under Rule 50. The final issue *14 is whether petitioners are entitled to deduct $550 as a loss from damage done to certain rental real estate by the tenant. The evidence indicates that Waldo sold this property to Edward Lank in September 1956 for $3,000 and took a mortgage on the property to secure the unpaid portion (amount unknown) of the purchase price, and that Waldo foreclosed under the mortgage sometime prior to August 1958. Waldo testified that he thought he foreclosed on the property in 1957. However, in a statement given to the revenue service, apparently in 1959, Waldo stated that the losses were on property on which he held a mortgage, and also that the tenant, who was an endorser on the purchase money note, deserted the premises in late December 1957. Waldo offered no satisfactory evidence that he actually owned the premises in 1957. Waldo also testified that he went to the premises sometime after the tenant left and found broken windows, frozen pipes, torn-up floors, and other damage that he estimated at $550. He did not repair the damage but demolished the house in August 1958. Petitioners did not file a brief and we are not certain of their basis for claiming the deduction. On a statement attached to *15 the income tax return, $350 of it was stated to be a casualty loss and the remaining $200 was simply reported as a loss. We cannot tell from the record whether petitioners owned the property in 1957, if so, what their basis in the property was, what difference in value of the property there might have been before and after the damage was done, or whether the damage was actually done in 1957. Petitioner did not spend anything to repair the damage in 1957, and we do not know whether he actually suffered a loss on the property when and if he ultimately disposed of it. There is no evidence of the cost of the items Waldo claims were either damaged, or destroyed, or taken away. In short, petitioners have failed to carry their burden of proving that they are entitled to deduct any amount for damages to this property in 1957 and we have so found in our Findings of Fact. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Bennett v. Commissioner, 139 F. 2d 961 (C.A. 8, 1944). Decision will be entered under Rule 50. Footnotes
*. The $32.50 for eyeglasses is listed on the return but does not appear to have been included in the totaleductions claimed.↩
1. All section references are to the 1954 Code unless otherwise noted.↩