Peter Chippi and Mary M. Chippi, et al. [1] v. Commissioner. Chippi v. Commissioner
Docket Nos. 3461-70, 3501-70, 3507-70.
United States Tax Court
T.C. Memo 1971-236; 1971 Tax Ct. Memo LEXIS 96; 30 T.C.M. (CCH) 1014; T.C.M. (RIA) 71236; September 15, 1971, Filed Robert E. Teaford, 100 W. Broad, Columbus, Ohio, for the petitioners. Juandell D. Glass, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The cases of these petitioners were consolidated for trial because similar proof and law is involved. The Commissioner determined deficiencies in income tax of the petitioners and also penalties under section 6653(a), I.R.C. 1954, [2] for negligence and intentional disregard of the income tax rules and regulations, as follows: Addition to the Tax
Petitioner
Year
Deficiency
Sec. 6653(a)
Peter Chippi and
1963
$ 948.16
$ 47.41
Mary M. Chippi
1964
875.00
43.75
Docket No. 3461-70
1965
930.08
46.50
1966
602.16
30.11
1967
991.48
49.57
1968 856.05
42.80 $5,202.93
$260.14
Albert Longoria
1963
$ 523.90
$ 26.19
Docket No. 3501-70
1964
488.37
24.42
1965
486.01
24.30
1966
369.46
18.47
1967
423.90
21.20
1968 $ 364.48
$ 18.22 $2,656.12
$132.80
Arnold F. Hager and
1966
$ 551.82
$ 27.59
Frances E. Hager
1967
569.89
28.49
Docket No. 3507-70
1968 788.14
39.41
$1,909.85
$ 95.49
*98 1015 We are asked to redetermine the deficiencies, which are based on the Commissioner's determination that each petitioner failed to report as income in certain calendar years during the period 1963 through 1968 a part of the tips he or she received in the course of employment as a waiter or waitress in the same restaurant. As petitioners claim they adequately reported all their tip income, they place in issue both the Commissioner's reconstruction of their tip income and the penalties. Further, petitioners Chippi and Albert Longoria raise the bar of the general statute of limitations, section 6501(a), as to deficiencies determined against them for the calendar years 1963 through 1965. The Commissioner contends that they understated their gross income in each of those years by over 25 percent and consequently the six-year period of limitations of section 6501(e) applies, under which the Commissioner's action and our jurisdiction of those years is not barred. We must decide (1) whether the Commissioner had warrant to reconstruct petitioners' tip income under section 446(b), and if so, whether his method was reasonable; (2) whether the determination of deficiencies and penalties *99 against petitioners Chippi and Albert Longoria for the calendar years 1963 through 1965 is barred; and (3) whether each petitioner is liable for the penalty determined under section 6653(a) in each year, if any, that we may find that he or she understated his or her tip income. Findings of Fact Some of the facts were stipulated and are incorporated herein together with the joint exhibits. Petitioners Peter Chippi and his wife, Mary M., are individuals residing in Columbus, Ohio. Albert Longoria and his former wife, Lorraine A., maintained a legal address in Columbus, Ohio, until they were divorced in July 1968; Albert Longoria now lives in a camper in Columbus, Ohio, located on a parking lot next door to his place of employment. Frances E. Hager, formerly Frances E. Hollis, resides with her husband Arnold F. Hager in the same city. All income tax returns in question were filed with the district director of internal revenue in Cincinnati, Ohio. The Chippis filed joint individual income tax returns for the calendar years 1963 through 1968. The Longorias also filed joint returns for the years 1963 through 1967, and petitioner Albert Longoria filed an individual return for 1968. *100 The Hagers filed a joint income tax return for 1968; Frances E. Hager filed individual returns in 1966 and 1967. Mary M. Chippi, Lorraine A. Longoria, and Arnold F. Hager have no other factual connection with this case and are not discussed further in this opinion. During the years in question, Peter Chippi, Albert Longoria, and Frances E. Hager were employed as waiters and waitress, respectively, by the Jai Lai Cafe, Inc., Columbus, Ohio (hereinafter referred to as Jai Lai), but Peter Chippi had the title and duties of captain, at a salary of $110 per week, from January 1, 1966 through April 24, 1966, a period during which he worked 103 days. The petitioners received tips from customers at the restaurant in the course of their duties as waiters/waitress and they received wages from their common employer. During the period petitioner Chippi was captain he received no tips. The majority of customers who contributed tips left cash at their tables. Some customers charged their purchases of food and drink and also charged their tips by entering on the guest check an amount to be paid the waiter or waitress. Not all customers who charged their purchases of food and drink also charged *101 their tips. Each petitioner gave 20 percent of the tips he or she received to his or her busboy, and reported no more than the remainder to the dining room manager of the restaurant as his or her own tip income. The three petitioners are efficient and competent waiters and waitress, respectively. 1015 Peter Chippi has been continuously employed at the Jai Lai since 1950; Albert Longoria has been employed there as a waiter continuously since 1961; Frances Hager has been continuously employed as a waitress at the Jai Lai since 1966. The Jai Lai is a superior quality restaurant which has a varied clientele consisting of businessmen, laborers, and families. About 20 percent of its business consists of family type dinners. The Jai Lai maintains a bar, a banquet room and a main dining room. It employs between 60 and 70 men and women as waiters and waitresses. The restaurant accepts male customers who are not attired in business suits, and 90 percent of all customers pay their guest checks at the cashier's station, as directed by the Jai Lai guest checks. The petitioners were requested to meet with the revenue agent assigned to audit the books of the Jai Lai and to produce substantiation *102 of their reported tip income, but only Frances Hager attended the conference. She submitted no personal records of her tip income at the conference. Peter Chippi kept a weekly record of his tip income for the calendar year 1964 in a spiral notebook. He employed the same method of recording his tip income in 1965, but did not produce the latter notebook at trial. Albert Longoria kept no records of his tip income for the period of 1963 through 1965, and Peter Chippi kept no record for 1963. After 1965, all three petitioners cooperated of their tips on a weekly basis. Each petitioner wrote the total tips he or she received during the preceding work week, less the 20 percent given to the busboys, on the time card maintained by the restaurant dining room manager, and signed the card. The typical time card contained the employee's preprinted name and social security number and the name and location of the restaurant. Occasionally the employee's address was not written in the space provided. The restaurant office manager prepared an employer's quarterly Federal tax report (Form 941) which reflected the amount of tips reported by the petitioners. The annual Form W-2, of which the Jai Lai *103 supplied each petitioner a copy, reflected the total tips he or she had reported on a weekly basis throughout the calendar year. Each petitioner was entitled to take one meal on the premises each day, and the restaurant aded $.30 compensation to each petitioner's payroll record for each day worked. If a waiter or waitress did not work on a day, the $.30 was not added to his or her reported compensation for that day. The number of days each petitioner worked in each calendar year equals the total amount reported as the value of meals served to each petitioner divided by 30. The number of days each petitioner worked is summarized below: *13 Number of Days Worked
Peter
Albert
Frances
Year
Chippi
Longoria
Hager
1963
268
239
1964
261
246
1965
232
258
1966
185
287
295
1967
292
276
297
1968
256
248
301
Each waiter/waitress in the restaurant was given a unique waiter/waitress number which he or she entered on his or her own guest checks. The Jai Lai kept separate records of sales made by each petitioner based on tallies of guest checks bearing the same waiter/waitress number. No such records were available for years prior to 1966. *104 The revenue agent assigned to audit the restaurant's books extracted certain data pertinent to each petitioner's sales of food and drink during sample periods of March 14, 1966 through April 10, 1966, and September 5, 1966 through October 2, 1966, but no data was prepared concerning petitioner Chippi for the earlier period, whic was a part of the interval during which Chippi was a captain. The Jai Lai experienced its busiest trade during the fall football season and at Christmas. The following is a summary of our findings of fact as to total sales, total charged sales with charged tips added on, total charged tips, the tip percentage on charged sales with charged tips added on, and total tips reported by each petitioner during the sample periods: Total Charged
Total
Total
Sales with
Charged
Sales
Charged Tips
Tips
Chippi
$3,244.35
$ 512.61
$ 76.49
Longoria
4,457.35
1,017.54
148.22
Hager
4,768.46
595.60
82.83
Charged Tips As a
Total
Percentage of
Reported
Charged Sales
Tips
Chippi
14.9%
$117.00
Longoria
14.5%
311.00
Hager
13.8%
114.00
The Commissioner determined that each petitioner understated *105 his or her income in 1017 each of the calendar years at issue by an amount computed by multiplying the number of days worked in each year by a dollar amount denominated the petitioner's average daily tip omission. To compute the average daily tip omission the Commissioner multiplied the petitioner's sales in each sample week by the petitioner's tip percentage on charged sales with tips added on, then subtracted the amount of tips reported by the petitioner for that week; these weekly tip omission figures were totaled and then divided by the number of weeks in each petitioner's sample period; the quotient was reduced to a daily average by dividing by the average number of days worked in a sample week, being total days worked divided by the number of weeks. Ultimate Finding Each petitioner's gross income for each of the calendar years in question is given below: Gross Income
Peter
Albert
Frances
Year
Chippi
Longoria
Hager
1963
$ 9,281.70
$ 5,570.69
1964
10,589.23
6,036.34
1965
11,285.38
6,550.56
1966
12,499.43
9,268.55
$ 4,552.41
1967
14,337.24
10,348.56
5,056.87
1968
11,649.95
5,243.45
12,355.38
Opinion (1) We *106 have no doubt that the Commissioner has authority to set aside the petitioners' reports of their income from tips and to substitute what in the Commissioner's opinion is a better estimate of the amount of such income. Under the statutory scheme the Commissioner has broad discretion to choose and employ a method to reconstruct income where the taxpayer has used a method of reporting which does not clearly reflect his income. We have no doubt that petitioners' methods of accounting and reporting tips were inadequate in the calendar years they did not keep written records, as they were obligated by section 6001 to do, and that the Commissioner was entitled to reconstruct income for those years. Barry Meneguzzo, 43 T.C. 824 (1965). The lost records of petitioner Chippi for 1965 must be treated as if they never existed, since we do not feel that the mere fact that the records were kept can prevent the Commissioner from reexamining the petitioner's reported income. The petitioners cooperated with the Jai Lai after 1965 in reporting their tips for purposes of the withholding tax; also, petitioner Chippi introduced the spiral notebook in which he wrote the tips he received *107 during 1964. Even as to those calendar years, however, we sustain the Commissioner in his position that the petitioners' records did not clearly reflect the amount of tips actually received. Fortunately the revenue agent who audited the books of the Jai Lai chose sample periods in 1966, so that the results of the petitioners' better efforts at substantiating their tip income were before him. We have examined the stipulated data for the sample weeks and conclude that petitioner Chippi reported tips averaging 4.5 percent of his total sales of food and drink, that petitioner Longoria reported an average 8.8 percent, and that petitioner Hager reported an average 3 percent. [3] Yet there was direct proof that on a portion of total sales, charged sales on which tips were charged, each petitioner's tips averaged about 14 percent. Moreover, the reported averages of Chippi and Hager seem so low in light of common knowledge as to be unreasonable. We hold therefore that the Commissioner was entitled to conclude that petitioners' reports of tip income for taxable years 1966 through 1968 and petitioner Chippi's 1964 notebook did not clearly reflect actual tip income received in those years. *108 Petitioners devoted considerable time at trial and in their briefs to attacking the fairness of the Commissioner's method of reconstructing their tip income. The Commissioner's general approach was clearly reasonable, indeed it was more accurate than that which we approved in the Meneguzzo decision since the figures for actual sales by individual waiters/waitresses during each year were available. We have only minor criticisms. We have found that waiters/waitresses at the Jai Lai gave 20 percent of their tips to busboys and reported no more than the net co their employer. The Commissioner's calculations failed to take this into account. Second, the Commissioner used the tip percentage on charged sales with charged tips added on as the average for total sales. This 1018 manner of computing tips overstates income if only because tips on charged sales are generally larger. It implies that all sales resulted in tipping at a high rate, near 15 percent, although some sales undoubtedly brought smaller tips or no tips at all. The average tip must have been lower, and we feel that a more cautious rate, 12.5 percent, should be used. The Commissioner should have taken into account the *109 fact that petitioner Chippi did not receive tips during the substantial period in 1966 when he was a captain at the restaurant. While the Commissioner need not prove directly every dollar of omitted tips, Mendelson v. Commissioner, 305 F. 2d 519 (C.A. 7, 1962), cert. den. 371 U.S. 877 (1962); Carroll F. Schroeder, 40 T.C. 30, 33 (1963), we do not think it too burdensome for the Commissioner to make this simple allowance in his formula. For purposes of computing tip omission in 1966, the 103 days petitioner Chippi worked at this position may be treated as days not worked. We have already deducted this time from the number of days on which we found petitioner Chippi worked in 1966. In our findings of fact we summarized the figures for each petitioner's gross income in each calendar year. Each figure is the sum of the petitioner's reported gross income, as disclosed by his income tax return, and the omitted tip income for the year, being the average daily tip omission multiplied by the number of days worked during the year. The average daily tip omission of each petitioner was computed in the manner employed by the Commissioner and outlined in *110 our findings of fact, with the adjustments indicated above in this opinion. Specifically, after making allowance for a lower average tip percentage and for the splitting of tips with busboys, we derived the average daily tip omission of $9.02 for petitioner Chippi, $2.81 for petitioner Longoria, and $7.74 for petitioner Hager. (2) Petitioners Chippi and Longoria raise the staute of limitations, section 6501(a), as a bar to consideration of the taxable years 1963 through 1965. If section 6501(a) applied, the Commissioner's action would surely be barred since the notices of deficiency were issued more than three (but less than six) years after the filing of the petitioners' income tax returns for those years. The Commissioner contends that the relevant statute is section 6501(e) (1) (A), which provides a six-year limitation period. In order to determine whether the two petitioners failed to report an amount greater than 25 percent of their reported gross income, the premise for the operation of section 6501(e) (1) (A), we recomputed the average daily tip omission and omitted tip income along the lines suggested earlier in this opinion with the following results: PETER CHIPPI
(Average Daily Tip Omission: $9.02)
Omitted In-
come as
Gross
Percentage
Income
Omitted
of Reported
Year
Reported
Income
Income
1963
$6,864.34
$2,417.36
35.2%
1964
8,235.01
2,354.22
28.6%
1965
9,192.74
2,092.64
22.8%
*111 ALBERT LONGORIA
(Average Daily Tip Omission: $2.81)
Omitted In-
come as
Gross
Percentage
Income
Omitted
of Reported
Year
Reported
Income
Income
1963
$4,899.10
$671.59
13.7%
1964
5,345.08
691.26
12.9%
1965
5,825.58
724.98
12.4%
The foregoing satisfies us that petitioner Chippi may not benefit from the shorter statute of limitations for the calendar years 1963 and 1964, but that consideration of the calendar year 1965 of petitioner Chippi and calendar years 1963 through 1965 of petitioner Longoria is barred by section 6501(a). (3) The Commissioner determined penalties against each petitioner for each year in question under section 6653(a), which provides: SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 *112 percent of the underpayment. The petitioners certainly were extremely negligent during the calendar years they failed to keep records of their tip income, and are liable for the penalty if the determination of the deficiency was not barred by 1019 the statute of limitations. Barry Meneguzzo, supra, at 836. We reach a different conclusion as to the years after 1965, when section 6053(a), which requires every employee to furnish periodic written reports of tips to his employer, became effective. The facts indicate that the procedure followed at the Jai Lai substantially complied with section 31.6053-1 (a), Employment Tax Regs., which permits the employer to facilitate the employee's recordkeeping duties under the statute by providing space on regularly used forms such as time cards. We note that section 31.6053-1(b)(2)(ii), Employment Tax Regs., imposes a condition of using this expedited procedure that the employer furnish the employee at the first payment of wages following the reporting of tips a payroll check stub or the like which shows the amount of tips reported, but we are disposed to overlook the absence of evidence in the record that this was done at the *113 Jai Lai. We find that petitioners maintained some records of their tip income in the calendar years 1966 through 1968, although such records did not adequately establish their tip income. There are many possible explanations for petitioners' faithful reporting of part of their tip income and the omission of the rest, but negligence or intentional disregard are not among them. Keeping accurate account of every tip may have been too difficult for these relatively unsophisticated petitioners even assuming great care. They may have been honestly mistaken about the amount of their tips; that would be a defense to section 6653(a). 10 Mertens, Law of Federal Income Taxation, sec. 55.25 at 188-191, 193-194. There is no suggestion of fraud in this case and section 6653(a) excludes intent to defraud as a premise. It is not uncommon that we have been unwilling to find negligence or intentional disregard of the income tax rules and regulations where, as here, the taxpayer's claim as to an item of income or deduction was relatively burdensome to substantiate, even though we sustained the deficiency. John Robinson, 51 T.C. 520, 541-542 (1968); Rushing v. Commissioner, 214 F. 2d 383 *114 (C.A. 5, 1954), affirming a Memorandum Opinion of this Court; Bennett v. Commissioner, 139 F. 2d 961, 967 (C.A. 8, 1944), modifying a Memorandum Opinion of this Court. Accordingly, we hold that petitioners are not liable for the penalties for the calendar years 1966 through 1968. We reach the same conclusion with respect to the penalties determined against petitioner Chippi for 1964. Since any systematic method of documentation satisfies section 6001 and the regulations promulgated thereunder, the law applicable to that year, we find that the spiral notebook constitutes some (though inaccurate) record of his tips. Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Albert Longoria, docket No. 3501-70; Arnold F. Hager and Frances E. Hager, docket No. 3507-70.↩
2. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
3. The Commissioner adduced lower figures for the tip percentages: Chippi, 3.6%; Longoria, 7%; and Hager, 2.4%. Our recomputations take into account the fact that petitioners reported as income no more than the net after giving their busboys 20 percent of the tips left by customers.↩