**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-75

UNITED STATES TAX COURT

SYLVESTER OGBAJIE IHEKE AND IJEOMA MARTHA IHEKE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24502-11S.                    Filed September 24, 2013.

Sylvester Ogbajie Iheke and Ijeoma Martha Iheke, pro sese.

Jon D. Feldhammer, for respondent.

SUMMARY OPINION

HAINES, Judge: This case was heard pursuant to section 7463 of the

Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code, as amended and in effect for the taxable year at issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $10,575[2] deficiency in petitioners' Federal income tax and a $2,115 accuracy-related penalty under section 6662(a) for 2007.  There are three issues for decision.[3]  The first issue is whether petitioners are entitled under section 162 to deduct expenses related to certain exporting activities for 2007.  We hold they are not.  The second issue is whether petitioners are entitled under section 165 to claimed loss deductions with respect to certain exporting activities for 2007.  We hold they are not.  The final issue is whether petitioners are liable under section 6662(a) for the accuracy-related penalty for 2007.  We hold they are.

## Background

Some of the facts have been stipulated and are so found.  Those exhibits attached to the stipulations and additional exhibits which were found admissible are incorporated by this reference.  Petitioners resided in California when the petition was filed.

---

[2]All amounts are rounded to the nearest dollar.

[3]The remaining issues are computational and need not be addressed.

I. <u>Petitioners' Education and Employment History</u>

Petitioners immigrated to the United States from Nigeria. After immigrating Mr. Iheke earned a bachelor of arts degree in accounting in 1984. Mr. Iheke then earned a master's degree in business administration (M.B.A.) the following year. Mr. Iheke passed the certified public accountant (C.P.A.) exam in 1990 and became a licensed CPA around 2008. Mr. Iheke completed all of the coursework for a master's degree in taxation.

From March 1993 to July 1994 Mr. Iheke worked in the accounts payable department of the California Department of Transportation. Between 1994 and 2010, Mr. Iheke worked for the California Franchise Tax Board, examining individual California State income tax returns. After 2004 Mr. Iheke worked on matters involving unreported income and tax shelters for the Franchise Tax Board. In 2010 Mr. Iheke left the Franchise Tax Board and began working for the Internal Revenue Service (IRS) as a revenue agent in the IRS' Bank Secrecy Act Division. Mr. Iheke's responsibilities as a revenue agent included investigating money laundering cases and suspicious currency activities. At the time of trial Mr. Iheke still worked as an IRS revenue agent.

Mrs. Iheke studied accounting in Nigeria for two years at a university. After immigrating to the United States, Mrs. Iheke studied nursing and became a licensed vocational nurse in 2005.

II. Exporting Activities

Mrs. Iheke purchased scrap leather from Bondcote Corp. (Bondcote) for export and resale to buyers in Nigeria (leather exporting activity). Mrs. Iheke used a freight company to move the scraps to a U.S. port. At the U.S. port, a customs agent cleared the leather for export from the United States to Nigeria. The leather was shipped by container to Nigeria where it again had to be cleared through customs. Once cleared it was transported to a warehouse in Nigeria and then sold wholesale from the warehouse by Mr. Judy Adinnu, a supposed friend of the Ihekes.

Petitioners made a total of 10 purchases from Bondcote between 2002 and the end of 2004. The shipments were made approximately two months apart. The scrap materials were put in bundles. Over the approximately two-year period, Mrs. Iheke purchased and exported 396,304 pounds of leather scraps at a cost of $50,454. Petitioners sold or otherwise disposed of the first five shipments of scrap material in 2002 and 2003. On one shipment in 2004 petitioners made

approximately an $18,000 profit. Petitioners claim the other five shipments were unlawfully seized by Nigerian customs.

In August 2004 Mr. Iheke purchased three Ford sport utility vehicles for export to Nigeria (car exporting activity). That same month Mr. Iheke exported two of the vehicles to Nigeria. In 2004 Mr. Iheke sold one of the exported vehicles for approximately $12,000. The second exported vehicle would not run because of mechanical problems and was discarded. The third vehicle Mr. Iheke purchased was never exported to Nigeria and was converted to personal use in 2006.

III. Tax Returns and Notice of Deficiency

Petitioners filed a joint Federal income tax return for 2007. Petitioners reported gross receipts, cost of goods sold, and certain utility expenses for the leather exporting activity and the car exporting activity (collectively, exporting activities) on separate Schedules C, Profit or Loss From Business. Petitioners claimed losses of $35,840 and $16,689 on the return for the leather exporting activity and the car exporting activity, respectively. Petitioners elected on the Schedules C to use the cash method of accounting to compute their taxable income from the exporting activities.

Respondent issued petitioners a deficiency notice. Respondent disallowed the gross receipts, cost of goods sold, expenses, and ultimately the loss deductions claimed with respect to the exporting activities. Petitioners filed a petition with this Court challenging respondent's determinations.

## Discussion

### I. Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners do not argue that the burden of proof shifts to respondent under section 7491(a), nor have petitioners shown that the threshold requirements of section 7491(a) have been met for any of the determinations at issue. Accordingly, the burden of proving that respondent's deficiency determinations are erroneous remains on petitioners.

### II. Deductibility of the Reported Schedule C Expenses Under Section 162

Petitioners have abandoned their reporting positions that the expenses reported on the Schedules C as cost of goods may be subtracted from the reported gross receipts in computing their gross income from the exporting activities. Petitioners argue instead that the expenses reported as cost of goods sold and the

other expenses reported on the Schedules C should be treated as deductible business expenses under section 162.

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Petitioners contend they are entitled under section 162 to deduct the expenses reported with respect to the exporting activities on the 2007 Schedules C. Respondent argues that the reported expenses were not paid or incurred in 2007 and therefore are not deductible. We agree with respondent.

Section 7701(a)(25) provides that the term "paid or incurred" shall be construed according to the method of accounting used by the taxpayer. Petitioners were cash method taxpayers. Under the cash method of accounting, items are includible in income for the taxable year in which received (actually or constructively) and expenditures are deductible for the taxable year in which paid. Sec. 451; sec. 1.461-1(a)(1), Income Tax Regs.; see also sec. 1.446-1(c)(1)(i), Income Tax Regs.

Petitioners testified at trial that they did not sell any goods with respect to the exporting activities in 2007. They also testified that all of the expenses they reported on the 2007 Schedules C for the exporting activities, except for certain expenses they purportedly paid for illegal bribes, were paid or incurred in tax

years before 2007. Additionally, the record otherwise reflects that petitioners neither received income nor paid or incurred any expenses (excluding purported illegal bribes paid to Nigerian customs) with respect to the exporting activities in 2007. The illegal bribes petitioners purportedly paid or incurred in 2007 are not deductible. See sec. 162(c). Given that petitioners admit all of the other claimed expenses were paid or incurred before 2007, they too are not deductible because they were not "paid or incurred during the taxable year". Accordingly, we reject petitioners' argument that the reported expenses for 2007 with respect to the exporting activities are deductible under section 162.

III. Deductibility Under Section 165 of Purported Losses From the Exporting Activities

Petitioners contend alternatively that they are entitled under section 165 to deduct as losses for 2007 the expenses reported as cost of goods sold and the other expenses claimed on the Schedules C. Section 165(a) permits a deduction against ordinary income for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." For individuals, the deduction is limited to: (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit though not connected to a trade or business; or (3) losses of property not connected with a trade or business or a transaction

entered into for profit, if such losses arise from "fire, storm, shipwreck, or other casualty, or from theft." Sec. 165(c); see also Lockett v. Commissioner, T.C. Memo. 2008-5, aff'd, 306 Fed. Appx. 464 (11th Cir. 2009). A loss deduction is generally permitted under section 165 only for a taxable year in which the loss is sustained, as evidenced by closed and completed transactions and as fixed by identifiable events occurring in that taxable year. Sec. 1.165-1(d)(1), Income Tax Regs. No portion of a loss is deductible until it can be ascertained with reasonable certainty whether there is a reasonable prospect of recovery. Sec. 1.165-1(d), Income Tax Regs. The burden is on the taxpayer to establish that there is a deductible loss and the amount of it. Boehm v. Commissioner, 326 U.S. 287, 294 (1945); Bennett v. Commissioner, 139 F.2d 961, 963 (8th Cir. 1944).

Turning to the car exporting activity, we find petitioners failed to prove they sustained any loss for 2007. Mr. Iheke purchased three Ford sport utility vehicles in 2004 for the car exporting activity. The record reflects that Mr. Iheke shipped two of the vehicles to Nigeria in August 2004. Mr. Iheke testified that one of these two exported vehicles was sold in Nigeria in 2004. He also testified that the other vehicle exported to Nigeria could not be sold because of mechanical problems and was "junked". His testimony reflects that the vehicle's mechanical problems existed in 2004 but does not reflect the date it was "junked" or

discarded. The record does not otherwise reflect that the vehicle was discarded in 2007. Finally, the remaining Ford sport utility vehicle was not shipped to Nigeria and was converted to petitioners' personal use in 2006.

As for the leather exporting activity, we likewise find that petitioners failed to establish that they sustained any loss for 2007 from such activity. Petitioners argue that they sustained a loss in 2007 from the leather exporting activity because they gave up on trying to recover five shipments of leather scraps that were purportedly seized by Nigerian customs. Petitioners did not produce credible evidence showing any shipments made in connection with the leather exporting activity were seized by Nigerian customs. The only evidence petitioners offered to support their claim was their testimony. We found both Mr. Iheke's and Mrs. Iheke's testimony to be self-serving and untrustworthy. We need not and do not accept any of their testimony. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Moreover, we find it incredible that petitioners would continue to make four additional shipments over an approximately eight-month period after the first shipment was purportedly unlawfully seized by Nigerian customs.

Petitioners are also not entitled to the claimed loss deduction with respect to the leather exporting activity for another reason. Petitioners testified that they paid illegal bribes to recover the shipments that were purportedly seized. Mrs.

Iheke testified that on December 31, 2007, she wired money to Mr. Adinnu, the supposed family friend, to be used in an effort to recover the five shipments from the Nigerian customs. Given the time zone difference between California and Nigeria, Mr. Adinnu likely could not have received the wire transfer until late December 31, 2007, or early January 1, 2008. So, even if we believed petitioners' testimony that the shipments were seized by Nigerian customs, the record indicates petitioners were likely continuing to attempt recovery of the purported seized shipments through the end of 2007 and into 2008. Under such a scenario, we find that it is very unlikely that petitioners could ascertain with reasonable certainty whether there was a reasonable prospect of recovery at the end of 2007. Accordingly, the loss from the leather exporting activity could not be treated as sustained in 2007.

We hold that petitioners have not met their burden of proving they sustained losses with respect to the exporting activities for 2007 and are not entitled to the claimed loss deductions under section 165.

## IV. Disallowance of the Reported Gross Receipts

Respondent disallowed the gross receipts reported on the Schedules C with respect to the exporting activities. The record reflects that petitioners did not

realize any income from the exporting activities in 2007. Accordingly, we sustain respondent's determination.

## V. Accuracy-Related Penalty

We now turn to the accuracy-related penalty respondent determined for 2007. Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty upon any portion of an underpayment of tax resulting from a substantial understatement of income tax. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Respondent bears the burden of production with respect to petitioners' liability for the accuracy-related penalty determined in the notice of deficiency and must therefore produce evidence that it is appropriate to impose that penalty. See sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Petitioners' understatement of income tax as reflected in the notice of deficiency is greater than 10% of the tax required to be shown on the return for the year at issue, which is greater than $5,000. Accordingly, respondent has met his burden of production.

The accuracy-related penalty is not imposed, however, with respect to any portion of the underpayment of tax if the taxpayer can establish that he acted with

reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances indicating that a taxpayer acted with reasonable cause and in good faith include "an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id.

Mr. Iheke prepared petitioners' income tax return for 2007. Mr. Iheke is a licensed C.P.A. and has worked as an accountant for at least 20 years. He has an M.B.A. and also completed all of the coursework for a master's in taxation. He worked as a tax examiner for the California Franchise Tax Board between 1994 and 2010. In 2010 he became a revenue agent for the IRS, working in the Bank Secrecy Act Division, where he still works today. Mrs. Iheke also studied accounting in college.

The underpayment for 2007 is the result of petitioners' disregarding rules and regulations on reporting income and claiming deductions against income. Given Mr. Iheke's education and employment background, we find petitioners' disregard of rules and regulations inexcusable. Additionally, petitioners failed to offer any persuasive evidence that they acted with reasonable cause and in good

faith.  We, therefore, hold that petitioners are liable for the accuracy-related penalty for 2007.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.